JACOB H. GRUBMAN, complainant-respondent,

*v.*

AMERICAN GENERAL CORPORATION and UTILITY EQUITIES CORPORATION et al., defendants-appellants.

[Argued October term, 1941. Decided January 9th, 1942.]

*Mr. Robert Carey, Jr.,* for American General Corporation.

*Messrs. McCarter, English & Egner* (*Mr. Arthur F. Egner, Mr. Lloyd F. Thanhouser* and *Mr. Nicholas J. Campbell, Jr.*), for Utility Equities Corporation.

*Messrs. Kessler & Kessler* (*Mr. Samuel I. Kessler, Mr. William Vieser, Mr. Samuel A. Mohlman, I. Henry Kutz* and *Mr. Leon Mohr*), for the complainant-respondent.

The opinion of the court was delivered by

BODINE, J.

The American General Corporation and the Utility Equities Corporation appeal from a decree entered in the Court of

Chancery requiring the American General Corporation to transfer to the Utility Equities Corporation 11,052 shares of the priority capital stock of the latter company purchased by the American General Corporation from the stockholders of the other company from July 5th, 1939, to October, 1939, and requiring the Utility Equities Corporation to pay therefor $55 per share, and directing the American General Corporation to return dividends received by it aggregating $44,208, and allowing counsel fees.

The action was a stockholder's suit brought by the holder of 50 shares of the priority stock in the Utility Equities Corporation and 100 shares of the common stock. There were about 90,000 shares of priority stock outstanding, so it is apparent that complainant had but a very small interest in the company, although he had owned his stock for a number of years. No other stockholders joined in the proceeding. The rule requiring a substantial stock interest in complainant before equity takes jurisdiction is passed.

The Utility Equities Corporation was authorized by its charter to purchase its stock on the open market. The purchase by a corporation of its own stock results in the reduction of the capital structure and often tends to the creation of a fictitious market for its stock. It is not a wholesome condition and does not exist in England. The Utility Equities Corporation is a holding company, and the value of its assets exceeds and has exceeded, for a number of years, the total market value of its priority stock, so that its open market purchases have inured to the benefit of its priority stockholders who did not sell. The market price paid, however, was lower than that offered by the American General Corporation. The common stock has at the moment, and had at the time the latter corporation acquired its interest, no book value whatever.

In the summer of 1939, American General Corporation acquired a large interest in the common stock in the Utility Equities Corporation, and, through its officers, it went to the directors of the Utility Equities Corporation and informed them that it desired to purchase as much as 20,000 shares of priority stock in the Utility Equities Corporation. It sub-

mitted an offer. This offer was sent to all preference stockholders in the Utility Equities Corporation. It was a clear and forthright offer to purchase their stock at $55 a share, and informed them in exact and specific language that the break-up value of their shares was then greater than the price offered.

It was this action upon the part of the companies which resulted in the decree appealed from.

The Vice-Chancellor found that there was a fiduciary relation between the two, since American General Corporation dominated and controlled the management of the Utility Equities Corporation. Even so, we are at a loss to see where there was anything unconscionable in that which transpired. No property was diverted from one corporation to another; no money of the Utility Equities Corporation was used to purchase any of the stock. American General Corporation paid the expenses of the preparation and the mailing of its offer to the Utility Equities Corporation stockholders. Certainly, one corporation may, if its directors so order, purchase stock in another corporation. The Utility Equities Corporation was not selling any of its stock, but refrained from purchasing its stock on the open market at the time the American General Corporation's offer was outstanding to its stockholders. The offered price was higher than that which the directors of Utility Equities deemed wise to pay. When it is good business to buy or sell stock can never be determined by rule of thumb. The directors of Utility Equities Corporation were free to use an honest judgment as to when they would or would not use its cash on hand in the purchase of stock in their own corporation. The fact that they permitted another corporation to purchase the stock is no reason to conclude that they had formed a dishonest judgment. The circumstance that if the purchase had been made by the Utility Equities Corporation, it would have resulted in an increase in the break-up value of the priority stock is no reason to charge the directors with dishonesty or restrict their freedom of action.

When a corporation shall buy stock is a question for the directors to determine. The imposition of a constructive trust, when a fiduciary relation exists, is an equitable device

to prevent fraud or unjust enrichment. We can find neither in this case. American General Corporation made a fair and complete proposal to the stockholders of the Utility Equities Corporation. Many stockholders accepted the offer. There is no basis to set aside the transaction in favor of Utility Equities, since there was no concealment of the plan, and the purchase possibly was as much for the benefit of one company as the other.

The explanation offered by the officers of the company was that, in their judgment, it was best that the company holding the controlling interest in the common stock should also have a substantial interest in the priority stock. Certainly, this would tend to a more conservative management of the affairs of the corporation. At all events, the question of when a corporation shall purchase its stock and the manner in which that purchase shall be made is like the management of any other corporate problem—a matter resting in the sound discretion of the directors—and in the absence of proof that the discretion has been dishonestly exercised the Court of Chancery is without jurisdiction to substitute a plan for the directors. *Ellerman* v. *Chicago Junction Railways, &c., 49 N. J. Eq. 217; Edison* v. *Edison United Phonograph Co., 52 N. J. Eq. 620; Berger* v. *U. S. Steel Corp., 63 N. J. Eq. 809; Merriman* v. *National Zinc Corp., 82 N. J. Eq. 493; Keely* v. *Black, 91 N. J. Eq. 520; Helfman* v. *American Light and Traction Co., 121 N. J. Eq. 1; DuPont* v. *DuPont, 256 Fed. Rep. 129; Bisbee* v. *Midland Linseed Products Co., 19 Fed. Rep. (2d) 24.*

It is unnecessary to discuss the other grounds urged for reversal.

The decree will be reversed, but without costs.

*For affirmance*—PERSKIE, J. 1.

*For reversal*—THE CHIEF-JUSTICE, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 13.