WINFIELD MIMNAUGH, PLAINTIFF, v. ATLANTIC CITY ELECTRIC COMPANY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided January 12, 1950.

*Messrs. Moore, Butler & McGee* (by *Mr. James N. Butler*), for plaintiff.

*Messrs. Lloyd & Horn* (by *Mr. John Lloyd, Jr.*), for defendant.

HANEMAN, J. S. C. This is a motion by the defendant for a judgment on the pleadings. Although an answer and reply have heretofore been filed, it has been agreed by stipulation between counsel that the Court may consider the motion as if no further steps had been taken other than the filing of complaint. It has also been stipulated that the interrogatories and depositions filed herein may be considered upon this motion.

The facts as set forth in the complaint and as amplified by the interrogatories and depositions are as follows:

On or about April 23, 1948, plaintiff became the owner of 100 shares of stock of the defendant corporation. Defendant was engaged in the business of manufacturing and selling electricity in the southern part of New Jersey. As a result of the manufacture and generation of electricity by the use of coal there resulted two by-products designated in the trade as "cinders" and "fly ash." For some period prior to December 21, 1948, the defendant had a contract with the Atlantic County Construction Company, under the terms of which the Atlantic County Construction Company neither received nor paid any consideration for the removal of cinders, but was paid at the rate of $3 per hour for the removal of fly ash.

On or about October 1, 1948, plaintiff retained one Samuel Morris, Esquire, attorney-at-law of the State of New Jersey, to investigate this arrangement and to take such action as might be deemed necessary. On November 9, 1948, plaintiff herein wrote to the president of the defendant as follows:

"Mar Contracting Co.
931 Mediterranean Avenue,
Atlantic City, N. J.
9 November 1948

American Gas and Electric Co.,
30 Church Street,
New York City, New York.
Attention: Mr. Philip Sporn,
President, Atlantic City Elec. Co.
My dear Sir:

In accordance with the suggestion of my attorney, Mr. Samuel Morris, I am writing you concerning the offer which I made the Atlantic City Electric Co. wherein I agree to pay $.25 per cubic yard for cinders and agree to haul away fly ash for $.25 per cubic yard. This offer is advantageous to the company for a number of reasons: (1) you give the cinders away free and I offer to pay $.25 per cubic yard for them, (2) you are paying $27 per day to haul the fly ash away and under my plan the cost would be reduced to app. $15 per day.

It seems to me, as a common stockholder, you have no right to waste the corporation's assets as you are doing at present. I have taken the matter up with the local officials of the Atlantic City Electric Co. and have received no satisfaction. I wish to bring this matter to your attention and trust you will advise me at once.

Yours very truly,
(Signed) W. N. Mimnaugh
W. N. MIMNAUGH."

The president of the defendant, having had a conference in New York with the said Samuel Morris, on or about November 12, 1948, immediately communicated with the vice-president and general manager of the defendant in Atlantic City, New Jersey. Shortly after the above referred to conference, defendant advertised for bids for the disposal of cinders and fly ash and awarded a contract to Marshall Brothers for the removal of cinders, upon Marshall Brothers' agreement to pay to defendant $1.60 per cubic yard, and a contract to Mar Contracting Co. for the removal of fly ash at a figure in excess of that theretofore paid to the Atlantic County Construction Company. The net result, however, of the competitive bids received in 1948 was a saving to the defendant company for the removal of both cinders and fly ash.

The plaintiff now demands reimbursement not only for his out-of-pocket costs, but a reasonable fee for his counsel, which he considers to be 20% of defendant's total receipts from the sale of the cinders.

The question now submitted to the Court for decision, by stipulation of counsel, may be stated as follows:

"Is a stockholder of a corporation entitled to be reimbursed for his expenses, including a counsel fee, where he has brought to the attention of the corporation a changed method of operating the corporation, which redounds to the corporation's financial benefit?"

It was further stipulated, for the purpose of resolving this question, that:

"(1) the sole relationship of the stockholder to the corporation is such as rises by virtue of his ownership of stock; and

"(2) the officers and directors of the corporation are not accused of a fraudulent motive or breach of trust, but rather of bad though honest judgment."

As stated in plaintiff's brief, his theory reduces itself to the following statement:

"The corporation property, whether cinders or anything else, constitutes a trust and the funds now received by the defendant for the sale thereof as a result of the efforts of the plaintiff are also a trust or common fund."
and

"Said trust fund must bear the necessary cost of saving it from waste and destruction."

■ The use by plaintiff of the expression "waste and destruction" in characterizing the Atlantic County Construction Company contract is very loose. It is presumed from the foregoing that in the absence of fraud or bad motive, the allegation reduces itself to a statement of a failure to realize as much upon the sale of the by-products of the manufacture of electricity as it was possible to realize. The failure to obtain the maximum return from the by-products was equivalent to neither waste nor destruction. Plaintiff was not called upon to intercede for the preservation of corporate assets. The most that plaintiff did was to bring to the attention of the management of the corporation of which he is a stockholder a means by which some additional revenue could be received.

He assumes the position that he is entitled to recover either as an agent of the corporation or as an agent of its other stockholders.

There is present in the case *sub judice* no express agency. Any agency must result as an implication founded upon the fact that the plaintiff was a stockholder of defendant.

■ An individual stockholder has not, by reason of his relationship as such, the direction or management of the corporation, and cannot act for it. *Vol. 5, Fletcher Cyclopedia,* § 2098, *p.* 343.

Nor is such a stockholder, as a result of such relationship, *ipso facto,* an agent of the corporation. *Lloyd W. Casner, etc., v. Raleigh, etc., Hospital,* 112 *N. J. L.* 252, 169 *A.* 630; *Fontana v. Polish National Alliance, etc.,* 130 *N. J. L.* 503. 33 *A.* 2d 844.

[■ It follows that in the absence of an actual express agency, the plaintiff is not entitled to recover as an implied agent of defendant.

It becomes necessary to consider further the inquiry as to his right to recover as a representative of other stockholders. To be entitled to compensation as such an implied agent, his action and relationship must be likened to that taken by a stockholder in commencing a derivative or representative suit.

■ In order to reach a conclusion on this subject it must be borne in mind that the business of a corporation is normally entrusted to its board of directors. *R. S.* 14:7–1. If the board of directors exercise their judgment honestly and sincerely, in the absence of a purpose which is unlawful or against good morals, the courts of this State will not substitute their judgment for that of the board.

In *Ellerman v. Chicago Junction Railways, etc., Co.,* 49 *N. J. Eq.* 217, 23 *A.* 287, the Court said at *page 232*:

"Individual stockholders cannot question, in judicial proceedings, the corporate acts of directors, if the same are within the powers of the corporation, and in furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment. Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of 'lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation."

See also *Casson v. Bosman,* 137 *N. J. Eq.* 532, 45 *A.* 2d 807; *Riddle v. Mary A. Riddle Co.,* 140 *N. J. Eq.* 315, 54 *A.* 2d 607.

■ The normal stockholder's derivative or representative suit is based upon one of two theories, either (1) that a corporate charter is a contract between the corporation and its stockholders and between the stockholders severally, whereby the corporate property will be employed for a specific purpose, or (2) that the directors are trustees for the corporation and its stockholders.

■ Such a suit is brought not only for the benefit of the individual plaintiff stockholder but as well for the benefit of all stockholders of a similar class and of the corporation itself. The bases of such actions are numerous. A few of the purported derelictions of the officers and directors supposedly violative of either the theory of contract or trust are fraud (actual or constructive), *ultra vires* acts, violation of charter, diversion of assets from proper purpose. *Mayer v. Oxidation*

■■■■■■■■■■

*Products Co., Inc.,* 110 *N. J. Eq.* 141, 159 *A.* 377; *Slutzker v. Rieber,* 132 *N. J. Eq.* 412, 28 *A.* 2d 528.

In the case *sub judice* we have neither any allegation nor any proof that the officers and directors violated their duties as trustees nor that the disputed action violated the stockholders' contractual rights. The sole cause of complaint lies in the fact that the judgment of the officers was not infallible, and that had they sought further, a greater return could have been had by the corporation from a disposal of the by-products.

■ The plaintiff could have had no recourse to the courts of this State, under the facts here stipulated, to force the management of the corporation to adopt a different method of disposing of the cinders and fly ash. No derivative or representative suit could have been successfully litigated, and had plaintiff attempted to litigate the question he raised he would not have been entitled to costs.

The defendant voluntarily acceded to the suggestion of the plaintiff. There was no necessity to even attempt to force acceptance of his proposal by filing suit. It must follow that since he would not have been entitled to recover had suit been commenced, he certainly cannot recover where defendant adopted his suggestion without the necessity of applying force through a suit.

■ The plaintiff is not entitled to recover as an implied representative of the other stockholders.

Defendant's motion for a judgment will be granted.