23 N.J. Super. 431 (1952)
92 A.2d 862
JAY ELIASBERG, PLAINTIFF,
v.
STANDARD OIL COMPANY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 12, 1952.
*435 Mr. Emanuel P. Scheck, Mr. John J. Clancy, and Mr. Stanley Kaufman and Mr. Joshua Peterfreund of the New York Bar, for the plaintiff (Messrs. Osborne, Cornish & Scheck, attorneys).
Mr. Josiah Stryker, and Mr. George A. Brownell, Mr. Edward F. Johnson and Mr. Stuart Marks, of the New York Bar, for the defendant (Messrs. Stryker, Tams & Horner, attorneys).
FREUND, J.S.C.
This action involves the legal validity of so-called restricted stock options granted as incentive to executives of the defendant Standard Oil Company, a New *436 Jersey corporation, pursuant to a plan recommended by the unanimous vote of the board of directors and adopted by a great majority of the stockholders.
The company's by-laws provide for 15 directors. On March 29, 1951 the board of directors unanimously recommended to the stockholders the adoption of the plan to be hereinafter outlined. The annual meeting of the stockholders was held on June 8, 1951, and prior thereto the text of the plan and the proxy statement was furnished to the stockholders, together with the notice of the meeting. Previously, the text and the proxy statement were submitted to the Securities and Exchange Commission in accordance with the provisions of the Securities Exchange Act and regulations thereunder.
The stockholders adopted the plan by a vote of 47,830,696 shares, which represents over 78% of the total outstanding issue of 60,571,000 shares, but which was actually over 97% of the stock represented at the meeting. Stockholders owning 1,200,000 shares, or less than 2% of the total outstanding issue, voted against the plan, and stockholders owning about 13,000,000 shares, or slightly more than 20% of the shares, failed to vote. It is clear, therefore, that even if we make the unwarranted assumption that those who neglected to vote were in opposition to the plan, it would still have had the approval of the great majority of the stockholders.
The plaintiff is the owner of 20 shares of the over 60,000,000 outstanding. Although this is a class suit, he has not been joined by any other stockholder, and no other stockholder gave any testimony in support of his charges.
As is well known, the defendant is one of the largest corporations in the world and the testimony indicated the extent of its interests. The directors testified regarding the training and development of its executives and of the necessity of retaining them. For a period of time prior to the formulation of the plan under consideration, the board explored incentives for the retention of its key employees.
*437 On September 23, 1950 the Congress enacted section 130A of the Internal Revenue Code, Revenue Act of 1950, Pub. Law No. 814, 81st Cong., 2nd Session. Its chief effect was to relieve the recipient of stock options of the payment of tax at ordinary income tax rates, even though the price at which the option is exercised is lower than the market price of the stock at the time of exercise. It came to the attention of the board of the defendant corporation that a number of competitors had adopted stock option plans conformally to the provisions of the Revenue Code.
To obtain for its own executives the benefits of section 130A of the Revenue Code, the plan under consideration was formulated and subsequently adopted. It provides that options to purchase stock of the company may be granted to any or all of the directors and to such other executives as are designated by the board of directors. All of the directors are full-time officers or employees of the company. The plan is in substance as follows: The board may grant options in its discretion subject to the limitations that no more than 600,000 shares amounting to less than 1% of the company's outstanding stock may be sold pursuant to such options. No more than one-third of such shares may be sold to directors. Options granted in any one year to all directors shall not exceed 60,000 shares. Options granted to any one director shall not exceed 8,000 shares in any one year and not more than 24,000 during the term of the plan. Each option is to be exercisable only after one year of continued employment immediately following the date the option is granted. The option price per share is to be determined by the board of directors, but not less than 95% of fair market value on the date the option is granted. The options may be granted from time to time in the discretion of the board, but (1) all options expire December 31, 1961, unless the board fixes an earlier date; (2) in case of death of an optionee, the option shall be exercisable by his personal representatives, heirs or legatees within a year after date of death, and (3) in other cases of termination of employment, the *438 option is exercisable only within three months of termination. No option is assignable, except as provided in case of death. All shares purchased by the exercise of options are to be acquired for investment purposes. The board from time to time may amend or revise the terms of the plan for the purpose of meeting any changes in pertinent law or governmental regulations, or for any other purpose which at the time may be permitted by law. But the board may not increase the plan's limitation on the maximum number of shares to be sold pursuant to options, either in the aggregate to all directors, or to any one director, nor may the board decrease the plan's limitations as to the minimum price at which shares may be optioned or extend the term of any option beyond December 31, 1961. The board is to supervise the administration of the plan and its rulings on questions of interpretation are final and binding upon all persons.
Pursuant to the plan, on June 29, 1951 the board of directors granted options to 80 executives for a total of 163,800 shares exercisable at $57.06 per share. For the purpose of satisfying these options the company purchased 129,700 shares of its own stock at an average price of $67.136 per share. Among the optionees for a total of 55,760 shares, or about one-third of the grant, are all the directors who formulated the plan, with the exception of Frank W. Abrams, chairman of the board, who received no options. The defendant indicates that the average attained age of the executives who received options was 51 years and the average length of employment by the defendant or its affiliates was 25 years.
The plaintiff attacks the legality of the plan upon three grounds. First, that it violates R.S. 14:9-1 et seq. Second, that the directors being among the beneficiaries of their proposal, each had a direct, personal and valuable interest in the stock incentive plan; that in their dealings with the stockholders the burden was upon them to prove full and fair disclosure of every material fact which might *439 possibly lead the stockholders to withhold consent, and that they were guilty of fraudulent conduct because of misleading representations and failure to make full and complete disclosure as to the true purpose of the plan and its effect upon the corporation. Third, that there was no consideration for the grant of the options and they constituted a gift of corporation property.
The validity of the plan as a whole under R.S. 14:9-1 et seq. is challenged by the plaintiff. The first issue is stated in the pretrial order, as follows:
"Is the proposal a plan for the purchase and sale of the stock to employees of the corporation within the meaning of R.S. 14:9-1 et seq?"
The pertinent portion of the statute, R.S. 14:9-1, reads as follows:
"Any stock corporation * * * may, upon such terms and conditions as may be determined in the manner hereinafter designated, provide and carry out a plan or plans for any or all of the following purposes:
"a. The issue or the purchase and sale of its capital stock to any or all of its employees and those actively engaged in the conduct of it business * * * and the payment for such stock in instalments or at one time, with or without the right to vote thereon pending payment therefor in full, and for aiding any such employees and other persons in paying for such stock by contributions, compensation for services, or otherwise."
R.S. 14:9-2 provides for stockholders' action upon any plan formulated by the directors, at a meeting called for consideration thereof. R.S. 14:9-3 enables a dissenting stockholder holding stock issued before April 15, 1920, to apply for appraisal of his stock. R.S. 14:9-4, as amended by the L. 1948, c. 93, § 1, gives the board of directors the right to amend or revise any plan adopted, except in instances not here pertinent, but "any amendment to or revision of the plan so made by the directors of the corporation may be altered, changed or repealed by the stockholders." The power to amend or revise the terms of the plan conferred *440 upon the directors by the provision in the plan does not bestow upon the directors any greater right than that granted by the statute.
R.S. 14:9-5 provides that:
"The privileges and powers conferred by this article shall be in addition to and independent of all powers and authority conferred by any other law, and not in restriction or limitation of any of the powers of corporations of this state."
On the narrow question whether the plan as a whole, providing for the grant of options, is a plan for the purchase and sale of stock within the meaning of R.S. 14:9-1(a), I entertain no doubt as to its validity. The issuance by a corporation of an option to purchase stock by an employee or those actively engaged in the conduct of its business, and the exercise thereof by such persons, constitutes "the issue or the purchase and sale" within the construction of R.S. 14:9-1 et seq. Diamond v. Davis, 38 N.Y.S.2d 103 (Sup. Ct. 1942), affirmed 265 App. Div. 919, 39 N.Y.S.2d 412 (App. Div. 1942), affirmed 292 N.Y. 552, 54 N.E.2d 683 (Ct. App. 1944); Holthusen v. Edward G. Budd Mfg. Co., 52 F. Supp. 125 (D.C.E.D. Pa. 1943); Boyle v. Glidden Co., 9 Ohio Supp. 14 (Ohio Com. Pl. 1942).
A plan may be valid insofar as it concerns optionees other than the directors and invalid with respect to interested directors. The burden of the proof required in a proceeding wherein the validity of a plan or the execution of it is involved varies in each case and depends upon whether or not the plan had stockholder approval. Insofar as beneficiaries other than interested directors are concerned, the burden of proving illegality or invalidity would be upon the challenger.
Directors have the discretionary power to employ, fix compensation and generally to use legitimate ends and means to retain employees or induce them to continue in the corporation's service, and in such matters the honest exercise of business judgment is controlling. R.S. 14:3-1(e).
*441 "Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interest, are left solely to the honest decision of the directors if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation." Ellerman v. Chicago Junction Railways, &c., Co., 49 N.J. Eq. 217, 232 (Ch. 1891).
Merriman v. National Zinc Corp., 82 N.J. Eq. 493 (Ch. 1913); Caldwell B. & L. Assn. v. Henry, 120 N.J. Eq. 425 (Ch. 1936); Grubman v. American General Corp., 130 N.J. Eq. 607 (E. & A. 1942); Mimnaugh v. Atlantic City Electric Co., 7 N.J. Super. 310 (Ch. 1950); Bresnick v. Franklin Capital Corp., 10 N.J. Super. 234 (App. Div. 1950), affirmed 7 N.J. 184 (1951); Harker v. Ralston Purina Co., 45 Fed.2d 929 (7 Cir., 1930), certiorari denied 284 U.S. 619, 52 S.Ct. 7, 76 L.Ed. 528 (1931).
The directors of a corporation are, of course, fiduciaries, and in their dealings with the corporation and the stockholders the utmost fidelity is demanded. Whitfield v. Kern, 122 N.J. Eq. 332 (E. & A. 1937). The personal interest of directors does not render a transaction void per se, but voidable at the option of the stockholders. Full and fair disclosure of all material facts must be made by the directors; mere notice is not enough. Rogers v. Guaranty Trust Co., 288 U.S. 123 (1932); General Investment Co. v. American Hide & Leather Co., 97 N.J. Eq. 230 (Ch. 1925), affirmed 98 N.J. Eq. 326 (E. & A. 1925).
Where there is no stockholders' approval of a contract or proposal in which a director has a personal interest, the burden is upon the director to completely justify the transaction. When stockholders have notice of the director's interest and authorize the directors to enter into a contract, the agreement will be unassailable in the absence of actual fraud or want of power in the corporation. Hodge v. United States Steel Corp., 64 N.J. Eq. 90 (Ch. 1902), reversed sub nom. U.S. Steel Corp. v. Hodge, 64 N.J. Eq. 807 *442 (E. & A. 1902); Robotham v. Prudential Ins. Co., 64 N.J. Eq. 673 (Ch. 1903); Gottlieb v. Heyden Chemical Corp., 83 A.2d 595 (Del. Ch. 1951), reversed 90 A.2d 660 (Sup. Ct. 1952), reargument denied, 91 A.2d 57 (Sup. Ct. 1952); Kerbs v. California Eastern Airways, Inc., 90 A.2d 652 (Del. Sup. Ct. 1952), reargument denied, 91 A.2d 62 (Sup. Ct. 1952); Kaufman v. Shoenberg, 91 A.2d 786 (Del. Ch. 1952).
The courts of Delaware recently considered stock option plans in the Gottlieb, Kerbs and Kaufman cases, supra. The opinions of Justice Tunnel in the Gottlieb case, of Justice Wolcott in the Kerbs case and of Chancellor Seitz in the Kaufman case enunciate so lucidly the principles of law pertinent here that I quote from them extensively. In the Gottlieb case, supra, the Supreme Court said in denying reargument, 91 A.2d at page 58:
"We understand that where the board members vote themselves stock options and do not obtain stockholder ratification, they themselves have assumed the burden of clearly proving their utmost good faith and the most scrupulous inherent fairness of the bargain. Fletcher, Cyclopedia of Corporations, (Perm. ed.), §§ 913, 916 and 921. Where there is stockholder ratification, however, the burden of proof is shifted to the objector. Holthusen v. Edward G. Budd Mfg. Co., D.C., 53 F. Supp. 488. * * * In such a case the objecting stockholder must convince the court that no person of ordinarily sound business judgment would be expected to entertain the view that the consideration furnished by the individual directors is a fair exchange for the options conferred.
Where the directors have represented both themselves and the corporation, and where there was no ratification by stockholders, and the action is thereupon duly challenged, the court will usually have no choice but to employ its own judgment in deciding the perhaps very close and troublesome questions as to whether the evidence shows that the directors in fact used the utmost good faith and the most scrupulous fairness. Where there was stockholder ratification, however, the court will look into the transaction only far enough to see whether the terms are so unequal as to amount to waste, or whether, on the other hand, the question is such a close one as to call for the exercise of what is commonly called `business judgment.' In the former case the court will reverse the decision of the stockholders; in the latter it will not."
*443 In the Kerbs case, 90 A.2d 652, at page 655, Justice Wolcott held:
"A majority of the stockholders, however, at the beforementioned special meeting called for that purpose ratified the stock option plan. That ratification cures any voidable defect in the action of the Board. Blish v. Thompson Automatic Arms. Corp., 30 Del. Ch. 538, 64 A.2d 581. Stockholders' ratification of voidable acts of directors is effective for all purposes unless the action of the directors constituted a gift of corporate assets to themselves or was ultra vires, illegal, or fraudulent. Keenan v. Eshleman, 23 Del. Ch. 234, 2 A.2d 904, 20 A.L.R. 227. Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385."
Here, the company, prior to the meeting, submitted to the stockholders the complete text of the plan and a proxy statement which specified that the stock options were to be of the type provided for under section 130A of the Internal Revenue Code. The plaintiff concedes that there has been technical disclosure, but contends that this was inadequate and not in compliance with the rule demanding full and fair disclosure. He argues that neither the text of the plan nor the proxy statement revealed to the stockholders the tax-wise effect of the execution of the plan, that is, that any profit realized by the optionees upon acquisition of the stock at a figure less than market value would not be taxable at ordinary federal income tax rates, but at the lower capital gains rate, but the corporation might not deduct any difference between its cost and lower sale price as a taxable loss against federal income or excess profits taxes. The plaintiff charges that the directors' failure to point out to the stockholders the advantages to the directors and the disadvantages to the corporation, constituted concealment and fraud. In effect, the plaintiff argues that it is the duty of a director who submits to the stockholder a full text of a proposal to accompany it with an analysis of the beneficial and detrimental aspects of the proposal. Undoubtedly, such data would be valuable material for a stockholder to receive, for I venture the opinion that a great number of stockholders do not comprehend the full impact of the reports and statements *444 they receive from corporations. I am aware that many a stockholder relegates to the wastebasket the literature he receives from corporations upon whose dividends he depends for income. I know of no legal authority, nor does the plaintiff submit any, which imposes upon a director the duty to explain or interpret the tax effects of a proposal the full terms of which are submitted to the stockholder. I believe it to be the obligation of the stockholder who receives the complete text of a proposal which may be involved or technical, to make inquiry  either from independent sources or from the corporation or the directors. In the latter instance, it would be the duty of the company or the directors to inform or advise the stockholder. A stockholder is chargeable with knowledge he could have acquired. United States Steel Corp. v. Hodge, supra; Bookman v. R.J. Reynolds Tobacco Co., 138 N.J. Eq. 312 (Ch. 1946).
In this case it is most significant that no stockholder who voted approval has testified that he was misled, or that had he known the results which the plaintiff presents he would not have voted approval. The plaintiff was his only witness and he was not misled because he voted against the plan.
Before being distributed to the stockholders the proxy statement was submitted to the Securities and Exchange Commission in accordance with the Securities Exchange Act of 1934. The officials made certain suggestions which were incorporated in the proxy statement. Section 26 of the act precludes the construction that such examination by the Commission implies accuracy and truthfulness of the statements in a proxy, and, indeed, the defendant makes no such contention. Whether a proxy statement complies with the Securities and Exchange Commission rules reposes in the exclusive jurisdiction of the federal courts. 15 U.S.C.A., § 78aa. Standard Power & Light Corp. v. Investment Associates, 29 Del. Ch. 593, 51 A.2d 572 (1947). Nevertheless, the fact of the submission of the proxy to the Commission is not to be ignored. It is a fact to be considered in conjunction with all other facts in the *445 case and without according to the examination by the Commission any element of approval.
The plaintiff urges that the plan in fact is a device to grant the directors and other executives additional compensation for their services without any increase in their duties or responsibilities or change in status; and, hence, the options were without consideration and constituted an ultra vires gift of corporate property. No contract of employment was entered into between any executive and the company at the time of the issuance of the options, and there was no evidence of any change in the terms or conditions of any existing contract of employment with any executive. Under the plan, however, each option granted is exercisable only after one year of continued employment, and succeeding options, subject to a total limit of ten years, which may be issued in the discretion of the board of directors depend upon continuance of employment. The plaintiff points out that the director-optionees testified that prior to the issuance of the options they were rendering their full services and best efforts on behalf of the company, and that they had not agreed to perform any additional duty or assume any further obligation. The plaintiff also argues that the options are additional compensation for services which the executives were under a duty to perform under the existing terms of employment, and constitute an unwarranted increase in salaries and excessive compensation.
The defendant contends that the purpose of the stock plan was incentive to induce executives to remain with the company. However, there was no convincing evidence that any executive-director of the company contemplated leaving the service of the defendant because of inadequacy of compensation, or that the directors were confronted with a real threat that the executives were considering separation from the company unless some incentive plan was adopted. If this were so, I believe that long term contracts of employment would have been requested by the company and required as consideration for the options.
*446 Subordinating technical to intrinsic consideration, it is my impression and belief from the evidence that the real purpose of the plan was to give executives additional compensation subject to the most favorable tax rates. I agree with the observation of Justice Wolcott in the Kerbs case, 90 A.2d 652, at page 656:
"The payment of additional compensation by such means (stock option plans) is currently fashionable with corporate management. It is probable that it will continue to be the vogue as long as the present Section 130A of the Internal Revenue Code remains the law."
Although, in my opinion, this is the real motivation for the plan, it is not invalid and the issuance of options thereunder is not illegal, under the facts of the case.
The letter of the company to the Securities and Exchange Commission, dated March 2, 1951, submitting the plan and proxy statement, stated: "The purpose of the program would be to provide an incentive and a reward for executives of the company," and the letter from the Commission declared that the Commission understood that the plan is for "incentive and reward." The notice and proxy statement to the stockholders presented the plan in full and these are sufficiently detailed to inform them of the proposal to issue options to directors and other executives for continuing in the employ of the company without requiring them to perform any additional duties or to asume new responsibilities. I repeat that no stockholder who voted for the plan has testified that he was misled, and the evidence presented does not warrant the inference that any stockholder was misled and would have voted in opposition to the plan if notice to the stockholders had been drafted as the plaintiff suggests it should have been.
Stock options may be adopted as a form of compensation for continuance in employment. Diamond v. Davis, supra; Clamitz v. Thatcher Mfg. Co., 158 Fed.2d 687 (2 Cir., 1947), cert. den. 331 U.S. 825, 67 S.Ct. 1316, *447 91 L.Ed. 1841 (1947). A corporation may, in the absence of restriction in its charter or statutory prohibition, reacquire its own stock for distribution among employees in execution of an incentive plan. Chapman v. Iron Clad Rheostat Co., 62 N.J.L. 497 (Sup. Ct. 1898); Berger v. United States Steel Corp., 63 N.J. Eq. 809 (E. & A. 1902); Bookman v. R.J. Reynolds Tobacco Co., supra.
In Kerbs v. California Eastern Airways, Inc., 90 A.2d 652 (Del. Sup. Ct. 1952), the court set forth the principles of law pertaining to stock options. It declared, at page 656:
"The validity of a stock option plan under which selected personnel of a corporation may acquire a stock interest in the corporation depends directly upon the existence of consideration to the corporation and the inclusion in the plan of conditions, or the existence of circumstances which may be expected to insure that the contemplated consideration will in fact pass to the corporation. Rosenthal v. Burry Biscuit Corp., 30 Del. Ch. 299, 60 A.2d 106; Sandler v. Schenley Industries, Inc., Del. Ch., 79 A.2d 606.
What is sufficient consideration to validate a plan depends upon the facts and circumstances of the particular case. Sufficient consideration to the corporation may be, inter alia, the retention of the services of an employee, or the gaining of the services of a new employee, provided there is a reasonable relationship between the value of the services to be rendered by the employe and the value of the options granted as an inducement or compensation. Wyles v. Campbell, D.C., 77 F. Supp. 343; McQuillen v. National Cash Register Co., D.C., 27 F. Supp. 639; Sandler v. Schenley Industries, supra.

* * * * * * * *
It would probably unduly limit legitimate corporate action to attempt to lay down a minimum set of prescribed requirements that must be contained in every compensatory stock option plan. * * * In view of the different circumstances of each corporation and of the permissible variations in the objects sought to be accomplished by stock option plans, the validity of each plan, of necessity, can be ascertained only after a full consideration, not only of the terms of the plan itself, but of the surrounding facts and circumstances as well. No rule of thumb can be devised to test the sufficiency of the conditions which are urged as insurance that the corporation will receive the contemplated benefit. The most that can be said is that in each case there must be some element which, within reason, can be expected to lead to the desired end. What that element may be can well differ in each case. * * *
*448 We do not think that it is indispensable to bind the optionee by an employment contract, but there must be some circumstance which may reasonably be regarded as sufficient to insure that the corporation will receive that which it desires to obtain by granting the options."
In Gottlieb v. Heyden Chemical Corp., 90 A.2d 660, at page 664 (Del. Sup. Ct. 1952), dealing with the same subject the Supreme Court said:
"As we view stock option plans, they are governed by no new or unusual rules, but by the familiar principles of contract. There must be a consideration for the granting of an option. * * * We certainly must disapprove the position of defendant's counsel that the mere honesty of the directors supplies the necessary consideration. * * * We should certainly not find, contrary to the fact, that a consideration was present merely because a recital in the contract piously proclaimed that it was. By the same token, if such consideration is necessarily inherent in the plan, it is a judicial responsibility to detect it and give it recognition. And if it is not necessarily inherent in the terms of the plan, but may appear from the attending facts and circumstances, then it is the court's duty to hear the testimony and consider those facts and circumstances.
Valid consideration for a contract of this character may be present in any of various forms. * * * In the absence of any express agreement to do anything, however, as we observed above, consideration may be inherent in the plan itself, as for the reason that the employee will be unable to take advantage of the option plan unless he first renders substantial services to the corporation."
In the instant case, options cannot be exercised by the optionees until after one year of service, and the granting and exercise of future options depends upon continuance of service. Such plans have invariably been upheld. Claimitz v. Thatcher Mfg. Co., supra; Holthusen v. Edward G. Budd Mfg. Co., supra; McQuillen v. National Cash Register Co., supra.
In his opinion on the petition for reargument in the Kerbs case, 91 A.2d 62, Justice Wolcott declared, at page 63:
"* * * the essential validity of this plan as effective corporate action depends directly upon the ratification of the plan by a majority of the stock, since all of the directors who adopted it were beneficiaries of the plan. This being so, the plan must be judged in the light of what the stockholders ratified."
*449 Because of the stockholders' ratification, the court will look into the transaction only far enough to see whether the terms are so unequal as to amount to waste, or whether on the other hand the question is such a close one as to call for the exercise of what is commonly called "business judgment." In the former case, the court will reverse the decision of the stockholders; in the latter, it will not.
"Use of this expression `business judgment' in instances where there was stockholder ratification apparently has been the cause of some difficulty. It is axiomatic in such cases that the courts will not substitute their own `business judgment' for that exercised in good faith by the stockholders. * * *
* * * in such a case * * * [the issue is] the presence or absence of consideration which has a value reasonably related to the value of the concessions made by the corporation. Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385. * * *
It may be readily conceded that the requirement of remaining with the company is some consideration, but retention of services for one day is just as accurately denominated consideration as retention for ten years. An important question * * * is whether these services and these options can sensibly be deemed to be the subjects of a fair exchange."
Gottlieb v. Heyden Chemical Corp., 91 A.2d 57, 58 and 59 (Del. Sup. Ct. 1952).
The question is whether the value of the services bears a reasonable relationship to the amounts to be paid under the plan; whether the value to the company of the benefits which it would receive from any optionee was so much less than the value of the options granted to him that no person of ordinary business judgment could be expected to entertain the view that the consideration furnished was a fair exchange for the options conferred. Is the compensation to be realized from the option so large and disproportionate to the services to be rendered as to amount to spoilation or waste of corporate assets? The plaintiff has not offered any proof whatsoever upon or from which the court can make any determination of the value of the services of the company's executives or that the compensation to be paid them, including any profit that might be realized from the exercise *450 of the options, is disproportionate to the value of the services. There was no evidence of the compensation paid to executives of competitors or other corporations as large as or comparatively as large as the defendant, so that the court could have a basis for evaluation.
The defendant's witnesses testified to the importance and value of the executives' services and the need for retaining them, at adequate salaries and benefits, in order that they should not be attracted to other companies. I am not unmindful of the interest of the defendant's witnesses, but after making due allowance therefor, there is no evidence before me which would warrant the substitution of my estimate of the value of the services for the judgment of the directors, approved by the overwhelming majority of the stockholders. Bingham v. Savings Investment, &c., Co., 102 N.J. Eq. 302 (E. & A. 1927); Madsen v. Burns Bros., 108 N.J. Eq. 275 (Ch. 1931).
The plaintiff argues that ratification by the stockholders, in order to be effective, must be by a fully informed body of stockholders and the burden of proving that the stockholders were fully and fairly informed is upon the directors, before the plaintiff can be required to prove the unfairness of the basic transaction. He urges that since the plan submitted to the stockholders for approval did not separate the proposal to issue options to directors from the proposal to issue options to other employees, but the two were fused together, therefore, the stockholders did not have an opportunity to signify their disapproval of the plan insofar as it applied to interested directors. The plaintiff further contends that while the plan indicated that the directors might participate, it omitted the names of the directors who were to participate and the extent of their participation.
I conclude, however, that the stockholders were furnished with the full terms of the proposed plan; that they were advised of the interest of the directors in the proposal, even though the names were omitted; and also of the terms upon which the options were to be issued and exercised. Therefore, *451 in view of the stockholders' approval and ratification, it was the duty of the plaintiff to prove unfairness of the basic transaction, and he failed to sustain this burden.
Finally, the plaintiff argues that it was legally impossible "for the stockholders to ratify in futuro, contracts with unknown directors for unknown consideration on both sides of the transaction, and upon unknown terms," relying on Gottlieb v. Heyden Chemical Corp., supra, and Kerbs v. California Eastern Airways, Inc., supra.
In reply to this the defendant argues:
"In making this contention plaintiff completely ignores the fundamental nature of the New Jersey Revised Statutes. * * * By adopting a stock option plan under Section 14:9-1 et seq. the stockholders accordingly authorized all action which might subsequently be taken within the framework of the plan."
The proceeding now before the court challenges the validity of the plan and the grant on June 29, 1951 of options to 80 executives for a total of 163,800 shares, seeks an injunction against issuance of further stock options and cancellation of options already issued.
I have reached the conclusion that under R.S. 14:9-1 et seq., as well as under general corporate law, to be valid a plan requires consideration; that the plan here is valid, as consideration may be found in the condition that one year's service is to be performed prior to the exercise of the option; and options issued on June 29, 1951 constitute valid grants. The conclusion is the same whether the options be regarded as additional compensation or as incentive to remain in the company's employ. However, it is not to be inferred from these conclusions that I regard the ratification by the stockholders as approval of all future options which might be granted by the directors. While the plan itself has been declared valid, the future execution of it must conform to legal standards within the framework of the plan. Although the facts in this case differ from the facts in the Gottlieb case, 90 A.2d 660, I agree with Mr. *452 Justice Tunnell's conclusions insofar as future action by the directors is concerned. He said, at page 665:
"Nobody can claim that actual stock options to persons not yet ascertained, for services not yet defined or perhaps even contemplated, have themselves been ratified. This is obviously a matter for future concern. Therefore, we presently see no fatal deficiency in the option plan affecting those shares. Options as to them will stand or fall by what remains yet to be done. Holthusen v. Edward G. Budd Mfg. Co., D.C., 50 F. Supp. 621."
Judgment accordingly.