In the Matter of NUISANCE CORP., a New Jersey Corporation, formerly doing business as M. Cattafi & Son, Inc., Debtor.

Lillian R. CATTAFI, Michael Cattafi, Jr. and Carolyn C. Cattafi, Plaintiffs,

v.

Thomas J. O'NEILL, Trustee in Bankruptcy, Defendant.

Bankruptcy No. 80–0672.

United States Bankruptcy Court, D. New Jersey.

Nov. 23, 1981.

Thomas J. O'Neill, Newark, N. J., trustee.

Cossman, Levenstein & Goodkin by Peter J. Cossman, and C. William Petrics, Chester, N. J., for Lillian R. Cattafi, Lillian Cattafi and Michael Cattafi, Jr. in bankruptcy proceedings.

Kenihan & Cohen by Lawrence Cohen, Succasunna, N.J., for Lillian R. Cattafi, Lillian Cattafi and Michael Cattafi, Jr. in State court proceedings.

## OPINION

D. JOSEPH DE VITO, Bankruptcy Judge.

Plaintiffs seek to enforce an alleged security interest in proceeds resulting from the sale of the debtor's assets. The relevant undisputed facts may be summarized as follows:

1. Plaintiffs, Michael Cattafi, Jr., his wife Carolyn C. Cattafi, and Lillian R. Cattafi, Michael Jr.'s sister, collectively owned approximately 66 per cent of the corporation's common stock. Michael Jr. was the president and a director of the bankrupt corporation. It appears that Lillian R. also served as an officer and/or director of the corporation. Michael Cattafi, Sr., owner of the remaining shares of the corporation, is an unsecured creditor of the corporation.

2. On July 5, 1977 the First National Bank and Trust Company of Kearny (hereinafter, the bank) filed a state court action on a note against the predecessor corporation, M. Cattafi & Son, Inc., joining as defendants Michael Cattafi, Sr., Lillian Cattafi, his wife, and Michael Cattafi, Jr. and Carolyn C. Cattafi, his wife, individually as guarantors.

3. On September 26, 1977 the bank obtained a default judgment solely against the corporation in the sum of $58,505.82 plus costs of $125.25.

4. On March 1, 1978, Michael Jr., as president of the debtor, entered into a listing agreement granting Lillian R. Cattafi, his sister and a licensed real estate broker, an exclusive right to sell the corporate assets.

5. On March 22, 1978, upon payment of the sum of $52,772.69 to the bank, Michael Jr. obtained an assignment of the judgment and the bank's security interest in the corporate assets. The plaintiffs in the case at bar did not levy on those assets, but took a security interest therein in the amount of the judgment ($58,631.07), together with interest at the rate of 8 per cent per annum. Michael Jr., as president, signed the security agreement for the corporation and joined with the remaining plaintiffs as the secured parties, followed by the filing of the appropriate financing statement.

6. On June 15, 1978, the corporation agreed to sell its assets to Q. Petroleum, Inc. Michael Jr. arranged for the sale. Plaintiffs contend that Michael Jr. effected the sale while acting as sales agent in Lillian R.'s real estate agency, independent of his position as shareholder, officer and director of the corporation. Both Michael Jr. and the real estate agency asserted a claim to a real estate commission of 10 per cent of the gross sales price, as provided for in the sales contract.

7. On July 31, 1978, the sale was consummated, with Q. Petroleum, Inc. paying a consideration of $67,121.63 to the corporation. The proceeds were allocated as follows:

$50,511.98—partial satisfaction of the assigned judgment and security interest

9,407.90—partial satisfaction of the real estate commission

7,191.75—legal fees

$67,111.63

It appears that, in addition to the principal amount of the judgment, $58,505.82, there was due costs of $125.25 together with interest of $3,962.37, totaling $62,593.44. As noted above, of that amount, $50,511.98 was paid in partial satisfaction, with the balance remaining in the sum of $12,081.46. To consummate the aforementioned sale, plaintiffs released their security interest in the corporate assets, obtaining in lieu thereof a new security agreement providing for a security interest in the proceeds from the sale of these assets to the extent of $12,081.46, together with interest at 8 per cent.

8. The debtor Nuisance Corporation, formerly known as M. Cattafi & Son, Inc., filed a voluntary petition in bankruptcy on April 14, 1980.

## DISCUSSION

Plaintiffs seek validation of their alleged secured claim against funds currently held by the trustee; the trustee objects. Bankruptcy Code § 506 defines the qualifications of a secured claim as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the

estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . (§ 506[a] )

It appears that the plaintiffs satisfied the formal requirements for perfection of their security interest pursuant to Article 9 of the Uniform Commercial Code. However, for the plaintiffs to prevail, their claim must first be an "allowed claim". *In re Hotel Associates, Inc.*, 3 B.R. 340, 6 B.C.D. 145 (Bkrtcy.E.D.Pa.1980).

The allowance of claims is governed by § 502 of the Bankruptcy Code, which provides in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.

The language of § 502[a] is clear and unambiguous. A claim against the estate will be allowed unless objection is taken. See 2 *Collier on Bankruptcy* ¶ 502.01 (15th ed. 1979).

There can be no question that a trustee qualifies as a "party in interest" and, therefore, permitted to object. See 2 Collier on Bankruptcy, ¶ 502.01 (15th ed. 1979). Section 502 of the Bankruptcy Code continues as follows:

(b) Except as provided in subsections [f][g][h] and [i] of this section, if such exception to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is enforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . .

The theme of § 502 is that, upon objection to a claim, the court, after notice and hearing, shall determine the proper amount of the claim. If, however, the claim falls within one of the paragraphs of § 502[b], it is simply not allowable. It should be noted that the exceptions provided in subsections

[f][g][h] and [i] are not relevant in the present case. See 2 *Collier on Bankruptcy* ¶ 502.2 (15th ed. 1979).

■ However, the applicability of § 502[b][1] is clear. To the extent that applicable law, including state law, provides the debtor a defense to the claim of a creditor, absent bankruptcy, such defense is available to the trustee in objecting to the claim. See 2 *Collier on Bankruptcy,* ¶ 502.-02 (15th ed. 1979).

The crux of the trustee's case is that Michael Jr. and Lillian R. Cattafi, as officers, directors and majority shareholders of the corporation, owed a fiduciary duty to the corporation and its minority shareholders; that, in seeking personal gain, they ignored this duty. Michael Jr. purchased the bank's judgment (which, together with interest, amounted to $62,593.44) for $52,-772.69 and then sought to collect the entire amount from the corporation, a profit of $9,820.75. In addition, Michael Jr. and Lillian R. claimed a commission for themselves on the sale of the corporate assets, further reducing the corporation's proceeds by $9,407.90.

■ The fact that officers and directors and controlling shareholders owe a fiduciary duty to their corporation and its minority shareholders, is well established under New Jersey law; see *Eliasberg v. Standard Oil Co.*, 23 N.J.Super. 431, 92 A.2d 862 (N.J. Ch.1952) aff'd., 12 N.J. 467, 97 A.2d 437; with respect to majority shareholders, see *Holub v. Jacobwitz*, 123 N.J.Eq. 308, 197 A. 423 (N.J.Ch.1937), aff'd 123 N.J.Eq. 162, 197 A. 425 (E & A 1938). Also see *The New Jersey Corporation—A Fiduciary Relationship*, 23 Rutgers L.R. 671 (1969).

■ In the circumstances here, plaintiffs clearly breeched their fiduciary duty. The opportunity to liquidate the judgment at less than its full value was available to the corporation, as well as to others. Only Michael Jr.'s apparent desire for personal profit prompted him to pursue his particular course of action. The imposition of the sales commission is further evidence of an

attempt by plaintiffs to reap personal profits at the expense of the corporation, its minority shareholders and, conceivably, its creditors. It should be noted that, at the time of plaintiffs' action, the corporation was in financial difficulty and unable to honor its promissory note. Further, it was but days after the bank obtained its judgment that Michael Jr. began to arrange for the sale of the corporation's operating assets. The derivation of the note discount availability, together with the additional expenses represented by the sales commission, could only exacerbate the corporation's financial problems. Upon these facts, the Court can only conclude that plaintiffs were totally indifferent to the well-being of the corporation, motivated solely by their desire to maximize their personal gain. In light of plaintiffs' breech of the fiduciary duty, to allow their claim would result in gross inequity. This is so notwithstanding the formal procedure of perfection of their alleged security interest.

As noted in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1938), in considering the predecessor to § 502[j] of the Bankruptcy Code, Justice Douglas stated:

> As we have said, the bankruptcy court in passing on allowance of claims sits as a court of equity. Hence these rules governing the fiduciary responsibilities of directors and stockholders come into play on allowance of their claims in bankruptcy. In the exercise of its equitable jurisdiction, the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder. He who is in such a fiduciary position cannot serve himself first and his cestuis second. He cannot manipulate the affairs of this corporation to their detriment and in disregard of the standards of common decency and honesty ... He cannot use his power for his personal advantage and to the detriment of the stockholders and

creditors no matter how absolute in terms that power may be and no matter how meticulous he is to satisfy technical requirements. For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandizement, preference, or advantage of the fiduciary to the exclusion or detriment of the cestuis. Where there is a violation of those principles, equity will undo the wrong or intervene to prevent its consummation...

As noted earlier, the plaintiffs abused their fiduciary positions in an attempt to gain personal profits. Realization of these profits would have worked to the detriment of the corporation, its minority stockholders and its creditors. If the plaintiffs had attempted to enforce their claims against the corporation, the latter could, under New Jersey law, successfully plead a defense. The equities of the situation are such that this Court is compelled to disallow the plaintiffs' claim. Accordingly, plaintiffs' entire claim of $12,081.46 is disallowed. Any purported security interest in the $9,875.53 currently in the possession of the trustee is invalidated.

In his supplementary brief, the trustee contends that, not only should the plaintiffs' claim against the estate not be allowed, but that the estate has a claim against the plaintiffs for additional monies, contending that plaintiffs' share of the proceeds realized on the sale of the corporate assets should be limited to the amount that Michael Jr. paid to purchase the judgment, and that the sales commission should be refunded to the estate. These issues were not raised in the pleadings, and that particular request for relief is denied at this time without prejudice, leaving to the trustee an opportunity to file a complaint before the Court for the desired relief.

Submit an Order providing for the dismissal of the complaint.