**Nicholas Ingebretsen, Appellant, v. John Lenc et al., Appellees.**

**Gen. No. 41,472.**

Opinion filed February 26, 1941. Rehearing denied March 10, 1941.

WEISSENBACH, HARTMAN, CRAIG & OKIN, of Chicago, for appellant; HARRY OKIN and CECIL MAGID, of Chicago, of counsel.

RALPH S. MCFARLAND, of Chicago, for appellees.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff, Nicholas Ingrebretsen, from a decree entered in the superior court of Cook county dismissing his complaint for want of

equity, and entering judgment against him, and in favor of the defendants, in the amount of $565.40, taxed as costs.

The complaint was filed by plaintiff as a shareholder, to set aside an alleged fraudulent and secret sale, to John Lenc, of 300 shares of treasury stock of the Grand Woodworking Company, for $6,000, which shares had been deposited with the said Lenc, president of said company, as collateral security for a loan of $12,000 made by him to the company; also to declare null and void a deficiency of $6,340 allegedly resulting from said sale; and asking for an accounting. The evidence was taken before a master, a report was filed, and the decree appealed from was entered pursuant to said report after written objections and exceptions thereto had been overruled.

The plaintiff's theory of the case is that the defendant, John Lenc, as president and director of Grand Woodworking Company, occupied a fiduciary relationship to the company and to the plaintiff as a shareholder thereof; that it was his duty in dealing with corporate assets to act in the best interests of the corporation and other shareholders thereof; that when Lenc acquired the 300 shares of treasury stock of the corporation, for $6,000 (the same having become a corporate asset upon the corporation's purchase thereof from John Nahnsen for $12,000), which stock had been deposited with Lenc as collateral security for a loan made by him to the company in the amount of $12,000, at a secret and private sale, without notice to the corporation or to the plaintiff, and at a price not only 50 per cent below the cost thereof to the corporation, but greatly below the actual book value thereof, defrauded the company and caused injury to the plaintiff; that Lenc further violated his trust in causing additional shares of stock of the company to be issued to him in payment of an alleged deficiency in connection with said sale, in consequence of which the sale and al-

leged deficiency arising therefrom are null and void. The plaintiff's contention is that the company is entitled to have the shares so acquired by Lenc returned to it upon payment by the company to Lenc of the amount of his loan, with interest, so that the company may either dispose of the stock to the highest bidder or retain the same as it may see fit.

The defendants contend that no unfair advantage was taken of plaintiff or the corporation by Lenc in acquiring the 300 shares of treasury stock in question, at a private sale, held pursuant to the terms of the collateral note, which said shares were pledged to secure; that the price paid for said shares was adequate; that plaintiff acquiesced in said transaction, and that neither plaintiff nor the corporation suffered any injury as a result thereof. The defendants, supplementing their theory as set out in plaintiff's brief, further contend that plaintiff's agreements and representations induced the transactions of which he complains; that defendant, John Lenc, did not profit by his acts; that the real dispute in issue is between two shareholders of the corporation; that no fiduciary relationship existed between plaintiff and defendant, John Lenc, as shareholders of the corporation.

The plaintiff in stating the facts contends that certain of the facts are not disputed, namely, that John Lenc, plaintiff Ingebretsen, and Nahnsen, caused the defendant Grand Woodworking Company to be incorporated with 900 shares of capital stock of a par value of $10 each, aggregating $9,000, the original investment of all the parties, for which 300 shares of stock were issued to each of them. It was intended that each own an equal number of shares, and a restrictive agreement was entered into between the parties regarding the sale of stock. John Lenc at all times since the beginning of the company was president thereof. The plaintiff, Lenc and Nahnsen drew only nominal amounts from the corporation as salaries, originally

$25 per week, then later $50 per week, reaching $75 per week in 1938, which amount was then reduced to $50 per week in 1939. All of the earnings of the corporation were permitted to remain in the business, with the exception of dividend payments over a period of years of $4,100 to each of the parties. At the suggestion of Hikes, the auditor for the company, yearly salaries were voted to Lenc in the amount of $20,000, and $15,000 each to Nahnsen and plaintiff merely as a bookkeeping entry, and against which their weekly salaries were charged, and by that process there was accumulated on the books of the corporation as due to the officers the sum of $100,239.07, which was never paid to said officers, was never intended to be paid to them, and was by them released to the company.

On January 3, 1939, the company purchased from Nahnsen his 300 shares of stock and his claim for salary for $12,000, Lenc loaned the company $12,000 to enable the corporation to purchase said shares, and received a collateral note payable 60 days after date, to evidence the loan, and the 300 shares of stock acquired by the company was given to Lenc as collateral for said note. Thereafter on May 4, 1939, Mr. Cunningham, a director and attorney for the company, at the request of Lenc, president of the company and holder of the note, conducted a private sale, the date of which had been fixed by Lenc, Cunningham and Hikes. No notice thereof was given to the company or to the plaintiff. Hikes, then secretary of the company, attended the sale at the request of Lenc and bid for said stock in the name of Mildred Smith, a daughter of said Lenc, and purchased same for $6,000. Thereafter the sum of $6,000 was credited by Lenc against the corporate note of $12,000, leaving a deficiency in the amount of $6,340, which amount represented the balance due, including interest and attorney's fees. Thereafter on May 5, 1939, a new note was executed by the company for the deficiency, and this

new note was paid by issuing additional shares of stock to Mildred Smith at the price of $20 per share.

On May 4, 1939, the date of the sale of the Nahnsen stock, the book value of the 900 shares of stock originally issued is claimed to have been approximately $67 per share. On January 3, 1939, at a joint meeting of directors and stockholders, an increase in the capital stock of the company from 900 shares of the par value of $10 per share to 1,950 shares of a like par value was authorized by resolution, making available 1,050 shares of new stock to be sold to the then shareholders at the price of $20 per share, this stock to be available to the then shareholders in proportion to the number of shares held by each of them. On the date of the adoption of this resolution, the plaintiff, Lenc, and Nahnsen, were each the owners of 300 shares of stock. On the same date Nahnsen sold his 300 shares of stock, together with his claim for wages, to the corporation for $12,000. None of the foregoing facts are in dispute.

The plaintiff contends that the principle of law that applies in this case is that an officer and director of a corporation stands in relation of trustee to the corporation and its shareholders and is required to administer its affairs for the benefit of all shareholders and to act solely in the interest of the corporation. This rule is the generally recognized rule, and our attention has been called to the case of *Long v. Wilson Stove & Manufacturing Co.*, 277 Ill. App. 57, where this court passed upon an action brought by a dissenting minority shareholder to set aside a sale of corporate assets. The lower court sustained the sale, but this court on appeal, reversed the lower court and set the sale aside, saying:

"Under the facts in this case we are of the opinion that James B. Wilson violated the duty that rested upon him as a director of this corporation. He had known for months that the then depressed financial condition of the country was such that it would be

difficult, if not impossible, to sell such property. From January to August of the same year Schott, on behalf of the company, had contacted 60 persons, firms or corporations of financial standing, endeavoring to interest them in the purchase of this property, but without avail. With such facts before him, it was his plain duty, as a director and in the capacity of trustee of the trust property to keep himself in such a position that he could at all times during the liquidation of the property exercise a fair and impartial judgment on matters arising on the sale of the property, and make every reasonable effort to sell it in such a way that it would bring the highest price to the corporation. When he filed a bid he removed himself from that position and violated his duty as a director and trustee. It is no excuse for him to say that no other bid was filed and that therefore if it had not been for his bid the sale could not have been made. Under the conditions, as then existing, he should have kept himself in such a position that he could fairly and impartially determine whether or not it was for the best interests of the corporation to sell the property at that time, or if it was to be sold, to place a minimum sale price upon the property before offering it, and reserve in the invitation the right to reject a bid that appeared inadequate. By the filing of his bid he placed his personal interests first, and therefore could not exercise such judgment on behalf of the corporation.

"At the stockholders' meeting of November 15th, the resolution could not have been adopted except by vote of a part of the shares owned by James B. Wilson; at the directors' meeting held on January 17th, following the opening of the bids, his bid for $15,000 could not have been declared to be the highest, except for his own vote as a director. Such a transaction cannot stand in equity."

It is clear from the facts in this case that there was no attempt to obtain outside bidders, but the date and

place of the sale was kept secret in order that Lenc could, without opposition, acquire the shares of stock at an inadequate price, far below the actual value of the shares. It appears also that no one representing the corporation as such was notified of the time and place of the sale, nor was any notice given to plaintiff Ingebretsen, who obviously would have been an inter- ested bidder. It appears from the record that Cunningham and Hikes were present at the sale, but that they did not undertake to act for the corporation. Cunningham conducted the sale on behalf of Lenc, and Hikes made the bid on behalf of Lenc. Under the circumstances, the principle of the *Wilson* case (*supra*) can be applied to the facts that we have before us.

Counsel for plaintiff contends that Lenc knew that the shares, at the time of his purchase for $20 had a real value of $67 per share, as reflected by the balance sheet of the corporation for June, 1939. Lenc testified that when he took the shares as collateral he considered them worth $12,000, and this at a time when, according to the stipulation of the parties, the salary indebtedness of Lenc and plaintiff was still carried on the books of the company as a liability. Our attention has been further called to the fact that at the time of the sale, the salary claims had been erased from the books, and as is further shown by the balance sheet of June, 1939, the bank loans of $17,000 had been reduced to $8,500. From the facts as they appear in the record, the shares had a book value of $67 per share on the date of the sale.

Another citation called to our attention is the case of *Union Ice Co. of Philadelphia v. Hulton*, 291 Pa. 416, wherein the defendant was president of the plaintiff company and made loans to it of $33,000. The loans not being paid, he brought suit against the company and obtained judgment for the amount due, issued execution, sold the property at sheriff's sale, and bid in for himself. He did not give notice to the directors

of the company of the time and place of the sale. The defendant, in that case, alleged that the fair market value of the property was not in excess of the purchase price, which fact plaintiff denied and brought suit for an accounting. The court in that case upon consideration of the question involved, said;

"This was not such notice as the directors were entitled to receive. It was vague and indefinite, only indicating a possible future intention. They were entitled to know when the execution issued and the time and place of sale in order that they might take steps to protect the interests of the stockholders for whom they and defendant were trustees. *Gilmore v. Gilmore Drug Co.*, 279 Pa. 193. Appellant further contends that he was not required to give notice of the execution and sale, that when he began legal proceedings to reduce his claim to judgment that was notice of all the consequences that might result from such proceedings, including notice that the property of the company would be sold after judgment if it was not paid. While it is true that in enforming his claim against a corporation a director or officer may employ the same methods as are open to other creditors (Corpus Juris, Vol. 14A, sec. 1905) yet in so doing he must take no unfair advantage of it. He must be scrupulous to see that someone on the corporation's behalf knows what is being done so that its interests may be safeguarded. (*Hechelman v. Geyer*, 248 Pa. 430; Thompson on Corporations, section 1254, p. 245; *Marr v. Marr*, 73 N. J. Equity 643); the last citation being a case, closely analogous to the one at bar, where also the president of the corporation bought its property at a sale on his own judgment and in which he gave no notice of the sale and it was held that the complaining stockholder could either treat the defendant as his trustee to the extent that the defendant profited by the sale or set it aside. *Law v. Fuller*, 217 Pa. 439, cited by appellant in support of his contention that notice by

him of the execution and sale was not required, points out that, where an officer or director who is a creditor of the corporation enforces his claim against it and buys its property in at the sale, he is 'subject to severe scrutiny and under the obligation of acting in the utmost good faith,' and that, while he may buy at the sale, the sale must be a fair one. In the pending case the proofs indicate that the price paid by appellant was not the fair value of the property." . . .

"We are satisfied, in view of the fact that no notice was given of the execution or sale and in the light of the prima facie proof that by his purchase appellant will profit at his company's expense, that the court properly decreed an accounting which will proceed in accordance with the equity rules."

When we come to consider the question involved now before us, an officer and director of a corporation is required to act with scrupulous care so that if he decides to become a purchaser of treasury stock of a corporation he should give notice to the interested parties so that they may be present at the time and place of the sale and bid if they so desire. Such a rule is desirable because it removed all temptation and provides for the fairness of the sale provided for in a collateral note, which sale would be without question a sale that is carried on in the light of the law as it has been declared in the last above cited case.

The defendants urge in reply to the contention of the plaintiff that plaintiff executed the collateral note for $12,000 as treasurer of the company. That does not quite control. While it is true that plaintiff may have executed the collateral note as an officer of the company, this did not give the defendant Lenc, the president of the company, the right to sell the collateral at a private sale without notice to anyone and to purchase the stock for $6,000, which had been given as collateral to secure a $12,000 loan to the company, and then to secure the balance by a further note of

the company which was afterwards paid by the insuance of 300 shares by the company, at Lenc's request, at $20 per share or $6,000. Defendants, however, fully recognize the rule that an officer or director in dealing with the corporation must act fairly and be free form all fraud or oppression, and it is with this view in mind that defendants submit their case to this court for its consideration. It is urged by defendants that plaintiff's authorities announce no new principles of law, but on the contrary, merely state certain general principles of law which have been long recognized and apply them to the facts of a particular case. The further argument of defendant is that plaintiff, Ingebretsen, had full knowledge of and participated in the transactions leading up to the sale of the collateral, and on the day following the sale, after being fully advised regarding the terms of the sale of the pledged collateral, executed a note on behalf of the corporation, representing the deficiency remaining after the sale of the collateral. Assuming that this suggestion of defendants is true, still the fact that plaintiff executed a note for $6,000, representing the deficiency, does not waive on behalf of the corporation the right to complain of the actions of its president in purchasing the stock in question. It is to be noted that the plaintiff's action in the case is not for an accounting for his own benefit. This action is one for the benefit of the corporation and its shareholders. The only interest that Ingebretsen has is the same as the other shareholders have in the result of the action. While it is true that there seems to be some disagreement between the parties in this action, still the question here involved is whether the defendants should account for the moneys or stock which they received by virtue of the sale of stock to the defendant, Mildred Smith, daughter of John Lenc. This action arose out of the question as to the ownership of the Nahnsen shares, and being the owner, Nahnsen had the right to receive

the full value of the shares from the corporation, as—from the record—it appears that he did. There is no question but what the Nahnsen shares were purchased and pledged by the defendant corporation for $12,000, and that plaintiff as treasurer signed the $12,000 collateral note of the company to pay for the stock. The question is as to the notice that should have been given of the sale. It would seem that there was a disposition to keep outside bidders from coming in and bidding at the sale, and, if so, then of course, the defendants must make an accounting.

There is one further question that we desire to speak of and that is as to whether this plaintiff was in a position to complain. The rule that applies would seem to be that when directors or officers of a corporation enter into a contract, where they are parties, on behalf of the corporation, there must be a ratification or express sanction of a majority of the stockholders at a stockholders' meeting, and, if there is the complaint of a single dissenting stockholder, there will be no ratification or sanction of the contract proposed. Upon this theory we desire to call attention to the case of *Endicott v. Marvel,* 81 N. J. Eq. 378, where the court has said:

"There are engagements which may be made by directors of a corporation with themselves in behalf of the corporation which ratification or even express sanction of the majority of the stockholders at a stockholders meeting cannot support against the will of a single dissenting stockholder. In cases of that nature (as well as in cases of voidable contracts which have been promptly repudiated by the stockholders) a single stockholder may maintain a Bill for relief in behalf of the corporation similar to the present Bill, in the event his inability to procure the corporation to faithfully prosecute such a suit in its own behalf. While the business management of a corporation primarily belongs to its directors, and while, unless specially re-

strained, their powers necessarily include the exercise of a broad field of business discretion, yet that discretion must be lawfully and honestly exercised; they cannot give corporate property to themselves, or to others nor can the majority of stockholders sanction such an act." The court further said in conclusion;

"What is here made the basis of this decision is the principle of law which denies to directors of a corporation, who are its creditors holding collateral security, the right to in effect foreclose the equity of redemption of the corporation in the collateral without adequate notice to the corporation which they represent. If it be found that the value of the collateral was in excess of the amount of the debt, the illegality of the transaction as against the will of a single dissenting stockholder becomes the more apparent."

Upon the questions involved here, we have the plaintiff as the dissenting stockholder who is complaining of the sale of the collateral without notice and at a time when it was not published so that all stockholders could have been present and offered a bid. Here, the value of the stock appears to have been $12,000, the amount which defendant, John Lenc, loaned to the corporation. He bid but $6,000 at the sale, and as we have stated in the facts, he obtained the 300 shares of stock and a note for the deficiency, which he had issued to him and the further 300 shares of stock issued in payment of this deficiency note, which stock is in the name of his daughter.

Under the circumstances as we have indicated them here and under the law, we are of the opinion that the defendant must account for the amount of money and stock that he received at a sale which was not held openly and which was without notice to the outside world as to the time the sale would take place. As a result of our conclusion the defendants must account to the corporation, and if, upon an accounting, the corporation is indebted to Josephine Lenc and the

corporation is without cash to pay same, a sale be made of the stock in question, of which sale notice shall be given to plaintiffs and others, so that they may be permitted to bid for such stock; all of the defendants are to make a full and fair accounting.

For the reasons stated, the decree dismissing the plaintiff's complaint for want of equity is reversed and the cause is remanded with directions to enter a decree for an accounting in accordance with views herein expressed.

*Reversed and remanded with directions.*

DENIS E. SULLIVAN and BURKE, JJ., concur.