**HOLTHUSEN v. EDWARD G. BUDD MFG. CO. (FELDMAN, Intervener).**

Civ. No. 3223.

District Court, E. D. Pennsylvania.

Dec. 29, 1943.

See, also, 52 F.Supp. 125.

Spencer Pinkham (of Holthusen & Pinkham), of New York City, and Frederick B. Smillie and A. Benj. Scirica (of Smillie & Bean), both of Norristown, Pa., for plaintiff.

Robert D. Abrahams and George Scott Stewart, Jr., both of Philadelphia, Pa., for intervening plaintiff.

Robert T. McCracken and Henry S. Drinker, Jr., both of Philadelphia, Pa., for defendant.

BARD, District Judge.

This matter arises on defendant's application to dissolve an injunction restraining

it from granting certain proposed options to specified executive and administrative employees.

The case was originally before me on plaintiff's motion for a preliminary injunction prohibiting defendant from enacting, attempting to enact, or permitting its shareholders to vote upon a proposed new article to the by-laws of the defendant authorizing its board of directors to grant the options in question, on the ground that such a by-law was illegal, and on defendant's motion to dismiss the complaint. On July 9, 1943, both motions were denied. 50 F. Supp. 621.

The proposed new article to the by-laws was duly adopted by the shareholders of defendant, and a hearing was had on plaintiff's complaint, which alleged that the granting of the options as a bonus to certain executive and administrative employees of defendant under the terms and conditions prescribed by the board of directors was illegal. On October 8, 1943, I decided that the granting of the proposed options should be enjoined on the ground that the value of the proposed bonuses bore no reasonable relation to the services to be rendered by the employees to whom they were to be given, principally because these employees undertook no obligation to continue in defendant's employ and gave no other consideration in return therefor. 52 F.Supp. 125.

In order to meet these difficulties, the board of directors revised the terms and conditions under which the options were to be granted and, on the basis of the new plan proposed, moved to dissolve the injunction.

On the basis of the entire record in this matter to date, I make the following special findings of fact:

1. Defendant is a corporation organized under the laws of the Commonwealth of Pennsylvania.

2. Plaintiff is a holder of common shares of defendant corporation, and is a resident of the State of New York.

3. The amount in controversy exceeds $3,000 exclusive of interest and costs.

4. On July 13, 1943 a meeting of the shareholders of defendant was held for the purpose, inter alia, of considering the adoption of a proposed new article to the by-laws of defendant authorizing it to "grant to such of the Company's executive and administrative employees (including officers) as the Board of Directors may determine, options, expiring five years from their issuance and not transferable except on the death of the holder, to purchase an aggregate of not in excess of 300,000 authorized and unissued shares of Common Stock of the Company" at a price equal to 125% of the market price of such stock at the time of the granting of the options.

5. At this meeting a total of approximately 67% of the outstanding votes was cast in favor of adoption of the by-law and approximately 5% against its adoption.

6. The board of directors thereupon approved a plan to grant to 160 specified executive and administrative employees options to purchase the entire 300,000 shares.

7. The options provided that their holders were entitled to purchase a stated number of shares of the defendant at any time within five years from their issuance at a price equal to 125% of the market price on the date of their issuance; that they were not transferable except by operation of law upon the death of the holder, in which event they were exercisable by the representatives of the deceased holder; and that the options should not be exercisable after the employment of the optionees by defendant had been discontinued unless otherwise specified by the board of directors.

8. Under the terms of the original plan, the optionees were not required to obligate themselves to remain in the defendant's employ.

9. After the issuance of the options under the original plan had been enjoined, the board of directors of defendant revised the terms and conditions under which the options were to be granted, but made no change in the officers and employees to whom they were to be granted or in the number of shares subject to each option.

10. Under the amended plan, the following terms and conditions were prescribed:

(a) In consideration of the issuance of the option, the optionee must agree to remain in defendant's employ for a period of one year following the date of its issuance;

(b) The option is not exercisable by the optionee until he has completed a year of continuous service for the defendant after its issuance, except in the event of his physical incapacity or death within the year; in the former instance he may exer-

cise it after a year from its issuance, and in the latter instance his executors or administrators may exercise it after a year from its issuance;

(c) The option is not transferable;

(d) The option may be exercised only while the optionee is in defendant's employ, except where the employment is terminated by the optionee's physical incapacity or death, or his retirement after one year's service, which retirement must be approved by the board of directors;

(e) And the option is granted for a period of five years from its issuance, and entitles the optionee to purchase the stated number of shares at a price of 125% of their market price on the date it is issued.

### Discussion.

The principal question now before the court is whether the amended plan for the issuance of the options has overcome the legal objections of the original plan.

On behalf of the plaintiff, it is strongly urged that since the amended plan grants options for the purchase of the same number of shares to the same persons and at the same price as the original plan, the addition of the requirement that the optionee must agree to work for defendant for a one year period in order to be granted the option constitutes a nominal consideration having no real relationship to the value of the options and is designed merely to meet technically the invalidity of the former plan. In reply defendant frankly states that the amended plan is designed to overcome the defects of the original plan, and urges that a reasonable relationship now exists between the value of the options and the consideration to be received by the defendant therefor.

■ I am constrained to agree with the defendant's contention. I do not believe that bad faith on the part of the board of directors of the defendant may be found from the mere fact that the same officers and employees have been granted options

for the purchase of the same number of shares. In the absence of such a finding of bad faith, there is no support for plaintiff's argument that the present plan is invalid, even if it might have been valid as an original plan.

Considering the present plan on its merits, therefore, the question is whether it appears that the value of the options does not bear a reasonable relation to the consideration to be received for them. That consideration is an agreement to remain in the employ of the defendant for at least one year and the further requirement that the optionee be an employee of the defendant at the time of his exercise of the option, except in the event of his death or physical incapacity during the year or thereafter or his retirement approved by the board of directors after a year of employment.[1]

With respect to the value of the options, plaintiff produced an expert witness who testified that their present value was, in his opinion, $2.50 per share. Defendant has strongly attacked both the competency and soundness of this testimony. I do not believe that it is necessary to regard this question with any legal nicety, because it seems clear that whatever value these options, which are non-transferable, may have, is highly speculative. Keeping in mind that the value of the options granted by the corporation is highly speculative, and that the employees do give consideration in return therefor, it is difficult to see how the court can justify the substitution of its judgment for that of the board of directors in determining whether the consideration for the option bears some reasonable relationship to their value. The amended plan presently before the court presents an entirely different situation from the original plan. Under the original plan, the employees gave no consideration of any kind for the granting of the options.

■ The burden is on a minority stockholder of a corporation who seeks to have the courts intervene in corporate manage-

---

[1] Plaintiff has argued that under the present amended plan, as distinguished from the original plan, there is no requirement whatsoever that the optionee be in the employ of the defendant at the time he seeks to exercise the option. The contrary seems to be true subject to the exceptions noted above. Paragraph 3 of the contract of employment which must be executed by each optionee as a condition of his receiving his option, provides: "It is expressly understood and agreed by the parties hereto that if (the optionee) shall discontinue his employment prior to the exercise of such option, except by reason of physical incapacity or death or shall be discharged for proper cause, the option to subscribe to shares shall automatically become null and void unless he has retired after the said one year period and the retirement has been approved by the Board of Directors * * *."

ment and restrain action approved by the board of directors, to establish that such action transcends the point where the will of the majority may properly be imposed on the minority. Unless this be so, the floodgates would be opened to a surge of litigation by which the courts would be called upon to review the action of corporate directors with respect to all contracts of employment and an unlimited number of other matters.

I am not convinced the plaintiff has shown that the consideration for the grant of the options under the amended plan does not bear such reasonable relation to the value of the options granted as to render their issuance an enjoinable waste of corporate assets as, in my opinion, the proposed issuance under the original plan would have been.

Both plaintiff and the intervening plaintiff have pointed out various respects in which the plan may be deemed "improper" and have made suggestions for remedying the objectionable provisions, as for example, the elimination of the right of a retired employee to exercise the option, for the reason that this right is not in furtherance of the asserted purpose of the grant of the options. While many of the suggestions made may have merit, they relate to matters which are within the discretion of the board of directors to accept or reject and plainly afford no basis for the court to amend the plan adopted by the board of directors so as to embody such suggestions.

Plaintiff finally argues that in any event the court should order the amended plan to be submitted to a new vote of the shareholders. He contends that there is no evidence whatsoever which justified the implication of the statement in the notice of the meeting of shareholders at which the original vote was taken, that the new article to the by-laws was, in the opinion of the board of directors, necessary and desirable in order to retain the services of the officers and employees to whom the options were granted. The shareholders, however, had an opportunity at the original meeting to consider the necessity of adopting the by-law in question, and plaintiff had an opportunity to point out to them at that time the absence of such necessity. In any event, when a board of directors of a cor-

poration takes action under the terms of a by-law adopted by the shareholders, there is no legal basis upon which the court may order such action of the board submitted to the shareholders for approval.

Finally, the intervening plaintiff contends that the plan adopted by the board of directors for the issuance of these options is not an "employees' share purchase plan" within the meaning of § 612 of the Business Corporation Act of 1933. This section[2] provides: "Unless otherwise provided in its articles, every business corporation may provide and carry out a plan for the issue and sale of · its authorized but unissued shares to its employees, or to the employees of any subsidiary corporation, or to a trustee on their behalf, without first offering such shares to its shareholders, upon such terms and conditions, and in such manner as shall be provided in the by-laws * * *."

Several of the contentions relied upon by the intervening plaintiff were disposed of in my previous opinion, 52 F.Supp. 125, but I did not pass at that time on the contention that this section did not authorize the action taken by the board of directors of defendant because at the time the options were exercisable under the plan the holders might no longer be employees. As applied to the amended plan, the argument of the intervening plaintiff is that the fact that the option may be exercised and the shares purchased by the personal representatives of a deceased employee or by an optionee after he has been physically incapacitated or has retired from defendant's employ, puts the defendant's plan beyond the scope of a "plan for the issue and sale of * * * shares to its employees." The purpose of this section of the Act appears to be to permit corporate employers to devise and carry out a plan by which their employees may be granted a share or interest in the corporation to enhance their incentive and loyalty. This purpose may be effected by granting to persons who are presently employees options to purchase shares at some future date, especially where the grant is, as under the present plan, conditioned upon an agreement by the optionee to continue in the corporation's employ for at least one year. That the optionee need not be an employee at the time of the exercise of the option may tend to reduce the extent to which the plan will effect the purpose of this section of the

---

[2] Act of May 5, 1933, P.L. 364 § 612, 15 P.S. § 2852—612.

Act, but does not place the plan beyond its scope.

I make the following conclusions of law:

1. In an action by a shareholder of a corporation to restrain it from doing acts approved by its board of directors the burden is upon the plaintiff to establish that such acts are beyond the scope of matters subject to the determination of the board of directors.

2. Plaintiff has failed to establish that under the amended bonus plan adopted by the board of directors of defendant corporation there is no reasonable relationship between the value of the options granted and the consideration received by the defendant therefor.

3. The grant of options under the amended plan does not constitute a gift of corporate assets by the majority of stockholders.

4. The amended plan is within the scope of an "employees' share purchase plan" authorized by Section 612 of the Pennsylvania Act of May 5, 1933, P.L. 364.

5. The injunction entered in this matter on October 8, 1943 does not prohibit the issuance of options for the purchase of shares of defendant's stock under the terms and conditions of the amended bonus plan adopted by defendant and set forth in its motion to dissolve the injunction.