99 A.2d 507 (1953)
GOTTLIEB
v.
HEYDEN CHEMICAL CORPORATION.
Court of Chancery of Delaware, New Castle.
October 8, 1953.
*508 Robert C. Barab, Wilmington, for plaintiff.
Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, Harmon Duncombe and George Rowe, Jr., New York City, for defendant.
SEITZ, Chancellor.
This is the decision after final hearing in an action by a minority stockholder seeking to enjoin the defendant corporation from recognizing certain stock option agreements entered into with seven corporate officers under a stock option plan. The options in question were authorized by the directors and ratified by a majority *509 of the stockholders at the time the option plan itself was also ratified.
This case was originally before this court on cross motions for summary judgment. This court denied both motions.[1] Later, on the basis of a stipulation, this court, without opinion, granted defendant's motion for summary judgment. Thereafter plaintiff appealed and on the basis of some three opinions of the Supreme Court the case was remanded to this court for trial.[2]
I first consider plaintiff's contention that the requirement for continued employment was not in fact the consideration for which defendant bargained and so cannot form the basis for finding that it constitutes consideration here. Defendant takes the position that in view of the limited scope of the remand, as gleaned from the various Supreme Court opinions, the plaintiff should not now be permitted to argue this point. Since it is doubtful that the Supreme Court intended to foreclose this related argument, I prefer to consider it on its merits.
Plaintiff points to certain recitals in the Plan, in the option agreements issued under the Plan and in the proxy statement issued in connection with the stockholder action thereon. These recitals make it clear that the corporation was taking advantage of the new tax law governing stock options and was giving the optionees an opportunity to acquire a proprietary interest in the corporation. The oral testimony tends to corroborate the various recitals. Plaintiff goes on to argue from these premises that the record fails to reveal that the defendant bargained for anything else. My difficulty is that I do not see how one can talk about "bargaining" over the things plaintiff mentions. The change in the tax law was merely the occasion for the adoption of the Plan and clearly such a Plan is intended to give the optionees an opportunity to buy stock.
As I read the Supreme Court opinions in this case, the Court decided that the option agreement requirement that the optionee remain with the company to a fixed future date in order to avail himself of the right to exercise the option as to the first installment of shares and until two later dates for the other two installments, constituted legal consideration.[3] The question of its sufficiency is decided later herein. Certainly this court cannot say that the corporation did not bargain for this continued employment as the legal consideration for the granting of the options when that very legal consideration is made an explicit and very important part of the option agreement. I therefore conclude that continuing as an employee at least until the fixed future dates was in fact the legal consideration for which the defendant bargained.
Plaintiff next advances four reasons why the defendant corporation received no recognizable exchange for the options. Let us consider them.
(1) Plaintiff says the record shows that the optionees were already exerting their maximum efforts on behalf of the company before the Plan was conceived. The term "maximum effort", especially as applied to management personnel, is a highly theoretical expression. As a practical matter, and within reason, there is always room for some additional incentive. But in any event, additional incentive compensation may be justified as a means of "insuring" continued maximum effort. Incentive is an intangible but vitally important employment factor. I cannot say that the corporation will not receive anything of value in exchange for the options.
(2) Plaintiff next makes the related argument that the optionees already have any incentive which might be provided by the options. Plaintiff relies on the fact that the optionees now receive substantial salaries *510 and are beneficiaries of a profit sharing plan. The corporation also makes contributions on behalf of the optionees to an insurance company in connection with the retirement plan. It is certainly true that the optionees have substantial incentives particularly in view of the substantial sums realized from the profit sharing plan. But it must be recognized that in these days of high taxes such compensation, being taxed as ordinary income, obviously does not have the attractiveness of compensation taxed only on a capital gains basis. So it must be said that stock options constitute a type of compensation which may provide an even greater incentive to create higher corporate profits.
(3) Plaintiff's third argument is that the optionees were adequately compensated before they received the stock options. While at least some of the optionees so testified, it does not follow therefrom that the corporation is precluded from granting them additional incentive compensation. Once again, within reason, it is a matter of business judgment and plaintiffs have not sustained the burden of showing that such judgment was exercised unlawfully.
(4) Finally plaintiff urges that the optionees testified that they were already satisfied with the terms of their employment prior to the issuance of the options and had not indicated an intention of leaving the company. As this court already pointed out in Kaufman v. Schoenberg,[4] option plans are not under our law "reserved for corporations which can show an immediate personnel problem. Indeed, one of the very functions of such a plan is to prevent such a problem arising." There is no merit to plaintiff's argument.
Plaintiff says that even if defendant received something of value in exchange for the options, it did not receive a fair exchange. As a background to the decision on this point it may help to know something of the defendant corporation. It has over 1,000,000 shares of stock outstanding. Its principal lines are the manufacture of numerous organic chemical and antibiotic products. It has several plants and is a growing and successful company in a highly competitive field with assets in 1950 worth over $28,000,000 and gross sales for the same year of over $26,000,000. There was unchallenged testimony that there has been a shortage of able management personnel in the chemical industry in the past 25 years, and that obtaining and retaining able management for a chemical company presents unusual difficulties. The defendant corporation has followed a policy of compensating its executive management with relatively low salaries supplemented by cash bonuses based on corporate earnings. In consequence, executive compensation has fluctuated greatly.
A long narrative could be given of the careful study and work which culminated in the Plan and options here involved. The Plan covers 50,000 shares, being about 4.7% of the outstanding shares. The option price was fixed at the closing market price on the date the options were granted. The committee specifically rejected a proposal that employment contracts be required. This was done because it was felt that employment contracts, generally speaking, do not benefit a corporation.
The committee recommended the number of shares to be allocated to each optionee and based its recommendation on the relative duties and responsibilities of the individual officers. These allocations were specifically ratified by the stockholders. In 1951 the Board of Directors also fixed a dollar ceiling on the amount each optionee would take under the profit sharing plan. This was done because it was expected that the option plan would be ratified by the stockholders. The result was that some $78,640 less was paid than would normally have been the case.
The seven options here involved covering 24,500 shares were issued as of March 14, 1951. The market price was then 18 7/8. They were divided into three approximately equal parts. The first third were made *511 exercisable on January 1, 1952, and the others at later dates. For our purposes it may be said that each option was exercisable only while the optionee was an employee.
The optionees, their respective positions, the total number of shares subject to option and their basic and incentive compensation, all for the year 1951, are set forth as follows:

 Shares Compensation
Remensnyder, Chairman 5,000 $93,200
 of Board, and Pres.
 until 9-24-52.
van der Stricht, Secretary 4,000 67,600
 in charge of Export
 Sales.
Askin, Vice President in 4,000 67,550
 charge of Labor Relations
 and Procurement.
Lulek, Vice President in 4,000 79,750
 charge of Research,
 Development, etc.
Harris, Vice President 3,000 66,700
 in charge of Fords
 plant.
Schwab, Treasurer. 2,500 38,950
Broadman, Ass't. Vice 2,000 28,800
 President in charge of
 Engineering

Plaintiff's charge of waste must be resolved, according to the Supreme Court, by making the following comparison:
"If this stockholder can show the Chancellor that the value of the options covered by these contracts is so much greater than the value of retaining these men with the company on their present scales of salaries and bonuses up until the respective dates specified in the contracts that no reasonable businessman, fully informed as to the respective values, and acting in good faith, could be expected to consider the bargain attractive to the corporation, then it would be shocking to preclude her from her right to prove it."
In the quoted language the Supreme Court seems to suggest the necessity for fixing a dollar value on these options. As this court noted in Kaufman v. Schoenberg, an intelligent dollar and cents valuation cannot be placed on options of this type at the time they are issued. Thus it becomes impossible as a practical matter to comply with the quoted direction of the Supreme Court if it be construed to require the making of such a valuation. However, I believe the language gives those making the determination the right to consider value relationships without fixing a dollar and cents figure on every element. All one can do is see whether the results appear to be shocking in the light of the total picture.
It is true, as plaintiff points out, that the optionees needed to remain in the defendant's employ for only a few months before the option on the first third of the shares could be exercised. Nevertheless, these options had to be issued at the market price on the date the options were issued. There is no showing that this price was in any way artificial. Thus the then "value" of the option for the first third was even more speculative than under plans calling for some percentage below the market. Considering the "stretch out" periods for the exercise of the options, the ratio of stock involved to the total outstanding, the market price, the responsibilities of the optionees and the overwhelming stockholder ratification, I cannot find that plaintiff has discharged her burden of showing such inequality as the Supreme Court would require me to condemn.
Additionally, while these optionees are already the beneficiaries of substantial compensation in the various forms mentioned, I take it that it is plaintiff's responsibility to show that the total compensation of each optionee, including the value of his options, is unreasonable when compared with the compensation of executives *512 similarly situated.[5] This the plaintiff has not done and the court is in no position to conclude in the abstract that the aggregate compensation of each optionee here is such that the addition of these options  although admittedly valuable  constitutes waste. Compare Eliasberg v. Standard Oil Co., 23 N.J.Super. 431, 92 A.2d 862, affirmed, 12 N.J. 467, 97 A.2d 437.
I therefore conclude that the grounds of attack on the seven options here involved are without merit.
Order on notice.
NOTES
[1] Gottlieb v. Heyden Chemical Corp., Del. Ch., 83 A.2d 595.
[2] Gottlieb v. Heyden Chemical Corp., Del. Ch., 90 A.2d 660; Id., 91 A.2d 57; Id., 92 A.2d 594.
[3] For a full statement of the Plan and options, see 90 A.2d 660.
[4] Kaufman v. Schoenberg, Del.Ch., 91 A.2d 786, 793.
[5] Since the question is not presented, I pass over situations where it is shown that such comparisons are not feasible.