Joseph F. Elward, Appellant, v. Peabody Coal Company, et al., Appellees.

Gen. No. 46,717.

First District, First Division.
March 5, 1956.
Rehearing denied March 21, 1956.
Released for publication March 21, 1956.

Edward S. Macie & Paul F. Elward, of Chicago, for plaintiff-appellant.

Hopkins, Sutter, Halls, Owen & Mulroy, of Chicago, for Peabody Coal Company, Stuyvesant Peabody, O. Gressens, Joseph Solari, Frank L. White, and John T. Rettaliata, defendants-appellees; Thomas R. Mulroy, William C. Childs, and George Kelm, of Chicago, of counsel.

JUDGE BURKE delivered the opinion of the court.

Joseph F. Elward, for himself and in a representative capacity, filed his second and amended supplemental complaint (hereinafter called the complaint) against Peabody Coal Company, an Illinois corporation, and its seven directors for a declaratory decree that a stock option is invalid, injunctive relief and discovery. He appeals from an order dismissing the complaint on defendants' motion that it is substantially insufficient in law.

The capital stock consists of 562,608 shares of prior preferred 5% cumulative $25 par, convertible into common stock at the holder's option at the rate of 2½ shares of common for each share of preferred, and 828,835½ shares of common at $5 par value. Sufficient shares of common stock are reserved for conversion of the preferred stock. The by-laws provide for a board of directors of seven members and that a majority shall constitute a quorum for the transaction of business. In October, 1951, Otto Gressens, one of the defendants, became an employee of the corporation. In 1951 the charter of the corporation was amended to provide that any shares of common or preferred stock may, in the discretion of the board of directors, be issued and disposed of from time to time in such manner, to such persons or corporations and for such consideration as may be determined by the board, without first being offered to any class or classes of shareholders. At a special meeting of the directors held December 21, 1953, a resolution was adopted giving Stuyvesant Peabody and Gressens an option during a nine year period commencing December 21, 1954, to purchase common stock at $3 a share, Peabody's option being for 20,000 and Gressens' for 40,000 shares. At this special meeting five out of seven directors attended. Peabody and Gressens were two of the five directors voting for the resolution.

The next day Peabody wrote a letter directing the cancellation of his stock option. On the day of the

special meeting an agreement was executed by the corporation and Gressens, whereby in consideration of the sum of $1 paid by Gressens as optionee to the corporation and the other good and valuable consideration, including the continued service of the optionee at least until December 21, 1954, the corporation granted to him an option to purchase on or before December 31, 1963, 40,000 shares of common stock at $3 a share. On the following day Gressens wrote the president of the corporation a letter stating that in consideration of and as a part of the option agreement he agreed to remain in the employ of the corporation for at least five years "under the salary arrangement suggested by you." On the day the option was granted the market price of the common stock was $3 a share; on June 28, 1954, it was $3⅜ a share and on December 31, 1954, it was $5⅛ a share. The parties agree that in June, 1955, the market price was $8 a share.

On January 18, 1954, plaintiff wrote to defendants objecting to the option. On February 8, 1954, plaintiff requested the defendants to annul the option transaction. In May, 1954, plaintiff and the management of defendants sent separate letters to the shareholders soliciting proxies for the annual shareholders' meeting to be held on June 28, 1954. In these communications the shareholders were informed about the option. The management statement said that inasmuch as the option price is $3 per share and the statute requires that the corporation must receive as consideration "not less than the par value of $5" that the company has three alternatives. At the annual shareholders' meeting of June 28, 1954, a resolution was adopted approving, ratifying and confirming the option agreement. The vote was 920,404½ shares in favor of the option and 313,761 shares against the option. The vote for the option was 66.15% of all the outstanding shares and 57.91% of the persons holding stock voted their shares in favor of the option.

238

■ ■ The plaintiff asserts that the Business Corporation Act does not empower a corporation to issue a stock option; that this power is not granted in express terms or by implication; that a shareholder is entitled under the common law to preemptive rights; and that the Act should be construed strictly so as not to impair the preemptive rights of stockholders. The public policy of this state is found in the Constitution, the statutes and the decisions of the courts. Plaintiff cites cases pointing out the distinction between the power to sell and the power to give an option. The preemptive right of shareholders to share pro rata in any new issue of corporate stock so that their interest will not be diluted but continue proportionately, is part of the common law of this State. Eidman v. Bowman, 58 Ill. 444; Tennant v. Epstein, 271 Ill. App. 204. Section 24 of the Business Corporation Act (Par. 157.24, Ch. 32, Ill. Rev. Stat. 1955) reads: "The preemptive right of a shareholder to acquire additional shares of a corporation may be limited or denied to the extent provided in the articles of incorporation. Unless otherwise provided by its articles of incorporation, any corporation may issue and sell its shares to its employees or to the employees of any subsidiary corporation, without first offering the same to its shareholders, for such consideration and upon such terms and conditions as shall be approved by the holders of two-thirds of its shares entitled to vote with respect thereto, or by its board of directors pursuant to like approval of the shareholders."

■ The first sentence of Section 24 provides that the charter of an Illinois corporation may limit or deny the preemptive right of a shareholder to acquire additional shares of stock. The second sentence of the section allows a corporation which does not have an express charter denial or limitation of preemptive rights, to issue and sell stock to its employees free of preemptive rights for such consideration and upon

239

such terms and conditions as shall be approved by the holders of two-thirds of its shares entitled to vote with respect thereto or by its board of directors pursuant to like approval of the shareholders. Plaintiff inquires that, keeping in mind the doctrine that corporate powers are to be construed strictly and that no power is to be implied unless reasonably necessary to an express power, under what section or sections could the power to issue stock options be regarded as implied? Section 5 of the Business Corporation Act states that each corporation shall have power to make contracts and incur liabilities, to elect or appoint officers and agents of the corporation, to define their duties and fix their compensations, and to exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is formed. It cannot be doubted that Illinois corporations are empowered to enter into contracts relating to employment. The implied powers which a corporation has in order to carry into effect those expressly granted and to accomplish the purposes of its creation are not limited to such as are indispensable for these purposes, but comprise all that are necessary, in the sense of appropriate and suitable, including the right of reasonable choice of means to be employed. 13 Am. Jur., Corporations, Sec. 740. We are of the opinion that there is ample implied power in Sections 5 and 24 of the Business Corporation Act and in Article 9 of the amended charter to sustain the action of the defendant corporation in entering into a valid contract with an officer or employee for a stock option.

██ ██ Having decided that under the Business Corporation Act a corporation has the right to impair the preemptive rights of shareholders by granting stock options to officers and employees and that the charter of the defendant corporation as amended authorized the directors to exercise that power, we

turn to a consideration of plaintiff's contention that the stock option granted violates provisions of the statute. We are of the opinion that in granting stock options a corporation is required to comply with the provisions of Section 24 of the Business Corporation Act and its charter. Plaintiff says that the stock option granted in the instant case violates that section in that it does not run to employees but to one employee. Section 1.03 of the Act governing the construction of statutes (Ch. 131, Ill. Rev. Stat. 1955) states that "the plural number may include the singular." We think that an Illinois corporation may grant stock options to one or more persons.

Plaintiff maintains that the proper construction of Section 24 requires that to deny a shareholder's preemptive right by issuing shares to its employees, there must be a determination to that effect and of the consideration therefor by the board of directors and an approval by two-thirds of the outstanding shares, and that satisfaction of one of these conditions is insufficient. Pursuant to the provisions of the first paragraph of Section 24, the corporate charter was amended to provide, among other things, that the board of directors could deny preemptive rights to the shareholders, and we have held that by implication these provisions authorize the making of contracts for stock options to officers and employees. The second paragraph of Section 24 would be operative if there were no denial of preemptive rights as set forth in Article 9 of the charter. The second paragraph of that section commences "Unless otherwise provided by its articles of incorporation" and then goes on to state that shares may be offered to employees "without first offering the same to its shareholders" upon the approval of two-thirds of the total shares. If preemptive rights have been completely denied to the shareholders under a charter provision pursuant to the authority

provided by the first paragraph of Section 24, as in the case at bar, then no requirement exists that the stock be first offered to shareholders.

■ ■ Plaintiff asserts that the stock option must fail because it is not upon terms and conditions approved by a qualified majority of the directors. At the meeting held on December 21, 1953, wherein the stock option was approved, five of the seven directors attended. These five included Peabody and Gressens, who were the optionees and beneficiaries. The resolution was adopted by five votes. Peabody and Gressens were disqualified to vote on this benefaction to themselves. Without counting these two votes there were only three directors voting for the resolution. Plaintiff argues that of the three directors, two others could be fairly regarded as interested and dominating, leaving only one clearly disinterested director. We agree with plaintiff that under the allegations of the complaint there was never any affirmative action by a qualified majority of directors. Luthy v. Ream, 190 Ill. App. 315, 270 Ill. 170. Defendants answer that any defect which might have occurred in the action of the directors in adopting the resolution was "vitiated by the subsequent approval overwhelmingly voted by the shareholders," citing Kerbs v. California Eastern Airways, Inc. (Del.), 90 A.2d 652; Federal Life Ins. Co. v. Griffin, 173 Ill. App. 5. The action of the board of directors in granting the stock option was approved by 66.15% of all outstanding shares at the annual stockholders' meeting.

■ Plaintiff insists that the stock option is illegal for the reason that it provides for the issuance at a price of $3 of shares having a par value of $5, in violation of Section 17 of the Business Corporation Act [Ill. Rev. Stats. 1955, ch. 32, § 157.17], which requires that shares having a par value may be issued for such consideration, not less than the par value thereof, as

242

shall be fixed from time to time by the board of directors. The par value of the common shares of the corporation is $5 per share. Plaintiff states that under the stock option the corporation agrees to sell 40,000 shares to Gressens at his option up to December 31, 1963, at a price of $3 per share, and that this is a clear violation of the statute. Defendants say that the option is not illegal. They concede that under the statute stock may not be issued for consideration of less than the par value thereof, and that the corporation must receive consideration totaling in value $5 for each share of stock issued to Gressens under the option. Defendants say that the option agreement provides that "the corporation shall always receive, prior to the issuance of any shares, that amount of consideration legally required to make such shares fully paid and nonassessable." Section 2 of the option agreement specifically provides that the purchase price of the shares of common stock shall be $3. This section further states that under "certain circumstances such purchase price per share is subject to adjustment as provided in Section 9." Section 9 (a) provides that if prior to the expiration date of the option ending December 31, 1963, "any of the events hereinafter shall occur, the stock purchasable under this agreement and the unit purchase price payable upon the exercise of the option granted herein shall be adjusted as provided in this Section 9." The section then goes on in (b) to provide that in the event the corporation shall issue a stock dividend or a stock split-up, there shall be an adjustment of the "per share or per unit price of the securities which the optionee shall be thus entitled to receive." The section further provides in (c) that in case the corporation shall be merged or consolidated that the optionee shall be entitled to receive the securities which he would have been entitled to receive had he exercised his option prior to the ef-

243

fective date of the merger or consolidation. The section provides in (d) that in the event of a dispute as to whether an increase or decrease of the per share or per unit price of securities is required under paragraphs (b) and (c), the decision of the independent public accountants who, at the time regularly audit the books of the corporation, shall be final and conclusive. Paragraph (c) of the section concludes with this sentence: "If appropriate, due adjustment shall be made in the per share or per unit price of the securities purchased, provided, however, that the corporation shall always receive, prior to the issuance of any shares, that amount of consideration legally required to make such shares fully paid and nonassessable." In our opinion the option agreement, after fixing the "purchase price" of $3, requires that the "full purchase price of shares purchased shall be paid upon the exercise of the option." The "full purchase price" means the purchase price at $3 a share. The concluding sentence of the paragraph that "under certain circumstances such purchase price per share is subject to adjustment, as provided in Section 9" relates to the adjustment to be made in the per share or per unit price under the contingencies provided for in Section 9, namely, adjustment for stock dividend, stock split-up, merger or consolidation. A careful reading of the option agreement convinces us that the corporation's promise is unequivocal that the purchase price of the shares shall be $3. This construction of the agreement is consistent with the action of the board of directors at the meeting of December 21, 1953, wherein the chairman proposed that consideration be given to the matter of authorizing options to purchase the shares of common stock hereinbefore mentioned "at a price of $3 per share, the present market price of the company's common shares on the New York Stock Exchange." The resolution then adopted, authorized and

244

directed the officers to enter into an option agreement with Gressens for 40,000 shares, and provides that the officers are authorized to make such changes in the form of agreements as are considered advisable by counsel, provided that the terms shall be "substantially the same as those provided for the instruments submitted to the meeting." The option agreement bears the date of the meeting and was presumably signed immediately after the meeting. In the resolution the officers were authorized and directed to carry out the option agreements according to their terms and to file any reports and give any notices that may be necessary from time to time with the New York Stock Exchange or any governmental agencies. We agree with the plaintiff that it would be reasonable to expect that if there were any qualifications or conditions in the corporation's promise to Gressens, such as the defendants now suggest, namely, that the promise included a provision that the corporation is always to receive "consideration totaling in value $5," that somewhere in the agreement or in the minutes of the meeting there would be a reference to this qualification or condition.

Defendants invite attention to the following from the proxy statement of the management sent to the shareholders prior to the annual meeting of June 28, 1954: "The option price is $3 per share, which was the market price on the New York Stock Exchange on December 21, 1953, the day the option was granted, subject, however, to the requirement of Illinois law that the company must receive as consideration not less than the par value ($5) for any theretofore unissued shares. . . . In the opinion of counsel for the Company, there is an obligation on the Company before delivery of shares under the option agreement not only to have received $3 per share from the optionee but also that the shares delivered be legally issued."

The statement sets forth three of the "alternatives available to the directors in order to fulfill the requirements of Illinois law" in this respect. Plaintiff argues that defendants' position that they have three alternatives to avoid the statute is without merit because each of the alternatives recognizes that the present promise of the corporation is a mere "illusory promise" and therefore void and unenforceable.

The proxy solicitation letter continued: "One of the alternatives available to the directors in order to fulfill the requirement of Illinois law is to recognize at the time Mr. Gressens elects to exercise all or any part of the option that the Company has received services of Mr. Gressens not covered by his current salary equal in value to the spread between the $3 a share to be paid by him in cash and the $5 par value of those shares. If this were done, there would be a transfer of the aggregate amount of such spread from the Company's surplus (income) account to its capital account." The plan thus outlined depends upon an uncertain future event over which Gressens has no control and which may or may not happen. When and if Gressens decides to exercise his option the future board of directors is under no legal obligation to give him a bonus covering the "spread" between the $3 purchase price and the $5 par value price of the shares. The proxy solicitation letter suggested that a second alternative "could be the delivery of treasury shares, if available at the time of the exercise of all or any part of the option." At no time since December 21, 1953, has the corporation had any treasury shares of common stock. The corporation is under no legal obligation to acquire shares of common stock to be held in its treasury. The proxy solicitation letter said that a "third alternative could be that the par value of the shares at the time of the exercise of all or any part of this option would be $3 or less per share or no par.

246

The last alternative would require shareholders approval by amendment of the charter. If present circumstances continue, neither the second nor third alternative will be adopted." This alternative recognizes that in order to make a valid contract to purchase the common stock at $3 a share, it would be necessary that the charter be amended to change the par value of the common stock to "$3 or less per share or no par value," which would require approval by two-thirds of the shareholders. As the promise of the corporation and Gressens' right to compel performance are conditional upon an uncertain future event which may never take place, it is obvious that there is now no binding promise. "The fundamental element of promise seems to be an expression of intention by the promisor that his future conduct shall be in accordance with his present expression, irrespective of what his will may be when the time for performance arrives." Corbin on Contracts, Sec. 16. The suggested alternatives do not contemplate an intention by the corporation that its future actions with relation to the payment of the consideration for the shares of common stock shall be in accordance with its present expression, irrespective of what its decision may be when the time for performance arrives. We conclude that the proposed alternatives constitute an illusory promise that requires further legal action on the part of the board to implement, which action the board is legally free to take or not to take and that therefore the promise is unenforceable.

■■■■ Defendants urge that it is premature to entertain the question of a consideration for the issuance of the stock, pointing out that Section 18 of the Business Corporation Act [Ill. Rev. Stats. 1955, ch. 32, § 157.18] provides that the judgment of the board of directors or shareholders, as the case may be, as to the value of the consideration received for shares shall

247

be conclusive. No part of the option has as yet been exercised. The defendants say that if and when Gressens exercises the option the directors will then determine how the agreement may be performed so that the shares issued to him will be fully paid and nonassessable, and that it is impossible to know now the circumstances which will confront the directors at the time the option is exercised. They suggest that if at that time plaintiff has reason to believe that "actual fraud" entered into the judgment of the directors in determining the value of the consideration, then he would have a remedy. We are of the opinion that plaintiff is entitled to a declaratory decree as to whether the stock option agreement is illegal. Section 57.1 of the Civil Practice Act (Par. 57.1, Ch. 110, Ill. Rev. Stat. 1955) provides that no action or proceeding in any court of record shall be open to objection on the ground that a merely declaratory decree, judgment or order is sought thereby, and the court may, in cases of actual controversy, make binding declarations of rights having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested, but the foregoing enumeration shall not exclude other cases of actual controversy. As there is an actual controversy involving the construction and validity of the stock option agreement, the complaint is properly brought. Exchange National Bank of Chicago v. County of Cook, 6 Ill.2d 419.

Defendants say that consideration may not be given on this appeal to plaintiff's theory that the option agreement is void as containing mere "illusory promises" because no such theory was raised below. The complaint alleged and discussed the three alternatives

248

suggested in the management proxy statement and set out the basis for the contentions advanced by him in this court. These allegations sufficiently informed the defendants that plaintiff claimed that the transaction was in violation of the statute, and that the three alternatives suggested had no validity.

 Defendants state that it is elementary that a contract supported by a consideration will not fail merely because one of several promises therein may be subject to a condition. In an option agreement there is the consideration for the granting of the option and the consideration for the purchase of the stock, namely, the purchase price, without which the option could not be consummated. Gottlieb v. Heyden Chemical Corp. (Del.), 99 A.2d 507; 17 C. J. S. Contracts, Sec. 100, page 450. It is unnecessary at this time to consider the adequacy of the consideration for the option because the contract must fail for the reason that the corporation could not contract to sell $5 stock for $3. Defendants cite Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, for the proposition that while consideration is essential to the validity of a contract, mutuality of obligation is not. We do not regard this authority as having any bearing on the power of the corporation to contract to grant a stock option to sell $5 stock for $3. There is no disagreement with the defendants' proposition that contracts will, wherever possible, be construed to be lawful. They say that it will be presumed that the parties intended to make the option subject to the requirements of Illinois law that stock may not be issued for the consideration of less than par value. In the instant case this presumption cannot be invoked because the option agreement specifically provides that the purchase price will be $3 per share. We agree with the statement of defendants on the general proposition that the courts will not substitute their judgment for that of the di-

rectors on the issue of consideration. Holthusen v. Edward G. Budd Mfg. Co., 53 F. Supp. 488 (E. D. Penn.); Kaufman v. Shoenberg (Del.), 91 A.2d 786. The directors, however, cannot grant stock options to sell the stock for a consideration of less than the par value.

As hereinbefore stated, a substantial majority of the shareholders approved the granting of the stock option. Defendants insist that where shareholders have approved an option it will not be set aside except for fraud. Where a stock option is granted under the authority of the first paragraph of Section 24 of the Business Corporation Act and a provision such as Article 9 of the amended charter, it is unnecessary to obtain approval of the shareholders. Defendants cite Eliasberg v. Standard Oil Co., 12 N. J. 467, 97 A.2d 437; Kerbs v. California Eastern Airways (Del.), 90 A.2d 652; Federal Life Ins. Co. v. Griffin, 173 Ill. App. 5, to support their argument that where shareholders have approved an option it will not be set aside except for fraud. However, in Voorhees v. Mason, 148 Ill. App. 647, a suit brought by a dissenting shareholder to compel restitution by directors who had voted stock to themselves as compensation for services in promoting the company, in answer to the contention that the acts of the directors had been ratified by the shareholders the court said (655):

"Officers of a corporation occupy the position of trustees for the stockholders with respect to the business and property of the corporation, and cannot have or acquire any pecuniary interest in conflict with their duties as such trustees. Hooker v. Midland Steel Co., 215 Ill. 444. The voting of the stock by the directors to themselves as compensation for services in promoting the company after the work was done, was voting back pay to themselves and is illegal. 'It is the same as giving away the assets of the company.' Cook on

Stock and Stockholders, sec. 657; Brown v. DeYoung, 167 Ill. 549. The acts of the directors in illegally voting stock to themselves could not be ratified by a majority of the stockholders as against a dissenting stockholder or one who had no knowledge of such fraudulent action."

In this case the Appellate Court required an accounting to the plaintiff for his pro rata part of the assets diverted. On appeal, 245 Ill. 256, the Supreme Court held that the accounting should be to the corporation for the full amount of the assets diverted and reversed on that point only, approving the rest of the Appellate Court holding. See also Farwell v. The Pyle-National Elec. Headlight Co., 289 Ill. 157; Ingebretsen v. Lenc, 308 Ill. App. 510. The Griffin case is not authority for the proposition that the shareholders can ratify an illegal act of the board of directors. On the trial of a case on its merits a chancellor may consider many factors, including the important one that the action of the board of directors has been approved by the stockholders in determining whether the action of the board of directors in a given situation should be sustained. It is manifest, however, that the shareholders cannot approve the action of the board of directors of a corporation agreeing to sell $5 par value stock at $3.

In Holthusen v. Edward G. Budd Mfg. Co., 52 F. Supp. 125, the district judge said (129):

"There can be no doubt that the granting of bonuses to employees may have a legitimate and valid function in a business whether conducted by a corporation or any other legal entity. It is likewise true that the board of directors of the corporation should have wide discretion in determining the amount of bonuses to be granted to its employees and the terms and conditions upon which they may be granted. But the amount of a bonus and the terms and conditions on

251

which it is to be computed must have some reasonable relation to the services to be rendered."

In a case of the same title reported in 53 F. Supp. 488, the same district judge said (490):

"The burden is on a minority stockholder of a corporation who seeks to have the courts intervene in corporate management and restrain action approved by the board of directors, to establish that such action transcends the point where the will of the majority may properly be imposed on the minority. Unless this be so, the floodgates would be opened to a surge of litigation by which the courts would be called upon to review the action of corporate directors with respect to all contracts of employment and an unlimited number of other matters."

In Clamitz v. Thatcher Mfg. Co., 158 F.2d 687, Second Circuit, the court said (692):

"Of course the directors were fiduciaries who were bound to act at all times fairly and honestly for the best interest of the corporation and could not take advantage of their position as 'insiders' for their own personal gain. They had to see to it that the corporation should have the benefit of their best judgment and act solely and always in good faith to promote its welfare. Pollitz v. Wabash R. Co. 207 N. Y. 113, 100 N. E. 721. Incentive compensation must bear a reasonable relation to the value of the services it is made to obtain. Such reasonable relationship is in the first instance an affair of business to be handled in the light of all the relevant circumstances in the exercise of the unbiased judgment of those in charge of the business itself. . . . Whether these defendants exercised their own sound judgment collectively as directors in granting the options is a matter of fact to be determined like any other fact from the evidence in the case."

252

In Gottlieb v. Heyden Chemical Corp. (Del.), 99 A.2d 507, the chancellor in answer to the argument that the optionees were adequately compensated before they received the stock options, said (510):

"Once again, within reason, it is a matter of business judgment and plaintiffs have not sustained the burden of showing that such judgment was exercised unlawfully."

It is unnecessary to discuss other points argued in the briefs. For the reasons stated the decree of the Superior Court of Cook County is reversed and the cause is remanded with directions to overrule defendants' motion to strike and dismiss the complaint, and for further proceedings not inconsistent with the views expressed herein.

Decree reversed and cause remanded with directions.

FRIEND, P. J. and NIEMEYER, J., concur.